118 Cal.Rptr.2d 850 (2002)
97 Cal.App.4th 1087
The PEOPLE, Plaintiff and Respondent,
v.
Alejandro P. GONZALEZ et al., Defendants and Appellants.
No. G025767.
Court of Appeal, Fourth District, Division Three.
April 19, 2002.
As Modified on Denial of Rehearing May 20, 2002.
Review Granted July 10, 2002.
Harvey L. Goldhammer, under appointment by the Court of Appeal, Glendale, for Defendant and Appellant Alejandro P. Gonzalez.
Deborah L. Hawkins, under appointment by the Court of Appeal, for Defendant and Appellant Jaime Pano.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Pamela R. Ratner and Marilyn L. George, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]

OPINION
ARONSON, J.
Alejandro Gonzalez and Jaime Pano were convicted of kidnapping, carjacking, robbery, and making terrorist threats and personal use of firearm allegations were found true. Gonzalez and Pano complain of an impermissible dual use of facts, claiming the trial court relied on their use of a gun during the crime to aggravate the carjacking count and enhance the sentence. They also contend the trial court violated their due process rights in ordering direct victim restitution without notice and an opportunity to be heard. Both contentions have merit, and we remand for resentencing only.

*851 I
Dominguez Sosa, a part-time jewelry salesman working out of his home, left his residence in the early evening to meet "Jorge," a potential customer. Sosa returned home when the putative buyer did not keep the appointment. Later, Jorge called and made arrangements with Sosa for another rendezvous. Sosa left the house without his inventory of jewelry, storing it in a locked closet.
As Sosa backed his car out of the driveway, Gonzalez approached and identified himself as Jorge. Taking a position in the front passenger seat, Gonzalez pulled a handgun from his waistband, and ordered Sosa to drive. Pano emerged from the bushes and got in the back seat. Pano took the gun and ordered Sosa into the passenger seat. Gonzalez threatened to harm Sosa's family if he did not cooperate, claiming two confederates were in his garage awaiting instructions. Taking the wheel, Gonzalez drove off with his captive.
Sosa's ordeal lasted several hours. During the drive, Pano pointed the handgun at Sosa. Gonzalez took Sosa's ring and Pano demanded his wallet. The kidnappers drove around Santa Ana before heading for Los Angeles. On the way, both men asked Sosa about his jewelry business. Gonzalez asked if any family member slept in the living room, and admitted he had been spying on Sosa and his sister for several days.
In Los Angeles, Gonzalez made numerous stops to place telephone calls. Eventually, the kidnappers headed back to Orange County. But Sosa's car stalled on the freeway near Anaheim. Gonzalez parked on the right shoulder and activated the emergency lights.
Two police officers pulled over when they spotted Sosa's disabled Honda Civic. Parked behind it was a Honda hatchback. Gonzalez approached the officers and explained his car overheated and his friend had stopped to assist. Satisfied with the explanation, one officer directed Gonzalez to merge onto the traffic lane. As Gonzalez reentered the Civic, the driver of the other car abruptly pulled away. Gonzalez tried to follow suit, but the alarm sounded when he tried to start the car. The officer approached and ordered all three men out of the car. Sosa surreptitiously displayed a note warning of his plight. The officer drew his gun. Sosa revealed the plot, and the kidnappers were arrested.
Sosa later discovered his jewelry had been stolen from his home. The closet door was unlocked, but there were no signs of forced entry.

II
Gonzalez and Pano were sentenced to a nine-year term for carjacking, based solely on their use of a gun during the crime. Both received a mandatory 10-year sentence for their use of a firearm under Penal Code section 12022.53, subdivision (b). Gonzalez and Pano contend this was an impermissible dual use of facts. (People v. Scott (1994) 9 Cal.4th 331, 350, 36 Cal.Rptr.2d 627, 885 P.2d 1040 (Scott) [court generally cannot use a single fact both to aggravate the base term and to impose an enhancement].) The Attorney General responds the defendants waived the "dual use" issue when they neglected to object to the sentence. To resolve this issue, we apply the waiver doctrine announced in Scott.
The Byzantine complexity of determinate sentencing continues to vex criminal practitioners, trial judges, and the appellate courts. A facile understanding of these arcane rules has eluded many experienced professionals. As a result, sentencing errors often go undetected in the trial court, only to emerge later on appeal.
Most sentencing errors could be corrected if brought to the trial court's attention *852 in a timely fashion. Historically, sentencing hearings were not structured to facilitate discovery of these mistakes. In the usual sentencing hearing, the court arraigned the defendant, and then allowed counsel to address sentencing issues. This often included a discussion of mitigating or aggravating circumstances, comments or objections to the probation report, and a request for a specific sentence. Counsel normally submitted after concluding their remarks, often without any inkling of the court's intentions. In pronouncing a determinate sentence, the court must state reasons for its sentencing choices, which can involve numerous findings. (See Cal. Rules of Court, rule 4.406(b).) In this context, lawyers had difficulty spotting sentencing mistakes when learning the court's reasoning for the first time, especially in complicated cases. Moreover, many courts would not tolerate an interruption from counsel during the pronouncement of sentence. Nevertheless, counsel's responsibility included understanding the rules of determinate sentencing, and failure to object to the court's discretionary sentencing choices operated as a waiver in the view of several courts of appeal, although the majority continued to address the merits of any claimed sentencing error.
Scott clarified application of the waiver doctrine in the sentencing context. Our Supreme Court held "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" could not be raised for the first time on appeal if defendant failed to object below. (People v. Scott, supra, 9 Cal.4th at p. 353, 36 Cal.Rptr.2d 627, 885 P.2d 1040.) "Routine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention. As in other waiver cases, we hope to reduce the number of errors committed in the first instance and preserve the judicial resources otherwise used to correct them." (Ibid.)
In Scott, the defendant complained it was "unrealistic to expect counsel to comprehend, remember, and respond to the various sentencing factors and choices delivered orally by the court," especially when "courts typically solicit argument from counsel before pronouncing sentence, and ... attempts to challenge the court's ruling after it is announced are usually discouraged or futile." Acknowledging various sentencing manuals and rules of court offered "no guidance on whether or how the court should accommodate objections by the parties to its statement of reasons and sentencing choices," the court held the normal sequence of events at the sentencing hearing must be altered to allow defendant a "meaningful opportunity to object.... This opportunity can occur only if, during the course of the sentencing hearing itself and before objections are made, the parties are clearly apprised of the sentence the court intends to impose and the reasons that support any discretionary choices." (People v. Scott, supra, 9 Cal.4th at p. 356, 36 Cal.Rptr.2d 627, 885 P.2d 1040, italics added.)
Thus, defendants who fail to object to the trial court's discretionary sentencing choices waive or forfeit those issues, but only if "apprised" of the sentence contemplated by the court and the reasons supporting it. Unfortunately, later cases have offered trial courts conflicting signals on how to implement Scott's requirements.
People v. Middleton (1997) 52 Cal. App.4th 19, 60 Cal.Rptr.2d 366 concluded Scott placed new restrictions on the waiver rule. The court explained "waiver does not apply if the sentencing court did not provide a tentative ruling which includes the court's discretionary choices and supporting reasons." (Id. at p. 37, 60 Cal. Rptr.2d 366.) In contrast, People v. Zuniga *853 (1996) 46 Cal.App.4th 81, 53 Cal.Rptr.2d 557 (Zuniga) took a broader view: "We do not interpret Scott's use of the phrase 'meaningful opportunity to object' to require a tentative ruling in advance of the actual sentence. In our view, a meaningful opportunity to object means that the defendant be given the opportunity to address the court on the matter of sentence and to object to any sentence or condition thereof imposed by the court." (Id. at p. 84, 53 Cal.Rptr.2d 557.)
In Zuniga, defendant received a low term prison sentence after his probation was revoked. The trial court did not explain why it chose to sentence the defendant to prison rather than reinstating probation, although this is a sentencing choice requiring a statement of reasons. (People v. Hawthorne (1991) 226 Cal.App.3d 789, 791, 277 Cal.Rptr. 85; People v. Jones (1990) 224 Cal.App.3d 1309, 1312-1315, 274 Cal.Rptr. 527.) Nevertheless, Zuniga concluded defendant waived the issue because "[n]othing in the record suggests that [defendant] or defense counsel was precluded from objecting to the sentence...." (People v. Zuniga, supra, 46 Cal.App.4th at p. 84, 53 Cal.Rptr.2d 557.) The sentencing hearing in Zuniga followed the procedure practiced before the decision in Scott. Defendant was given an opportunity to argue, the matter was submitted, and the court pronounced sentence. But Scott concluded this traditional approach "discouraged" objections to the sentence and held a waiver would not be implied in this setting unless the record demonstrated defendant was apprised of the sentence and the reasons supporting it. (People v. Scott, supra, 9 Cal.4th at pp. 356-358, 36 Cal.Rptr.2d 627, 885 P.2d 1040.)
We think trial courts should take more affirmative steps to inform defendants of the reasons for the contemplated sentence than those on display in Zuniga. Scott certainly called for a change along these lines, noting the decision "effectively changes the circumstances under which such claims are litigated, and may require substantial practical alterations in the way sentencing proceedings are routinely conducted." (People v. Scott, supra, 9 Cal.4th at p. 358, 36 Cal.Rptr.2d 627, 885 P.2d 1040, italics added.) A tentative ruling procedure during the sentencing hearing would satisfy Scott's requirements. The defendant would then be required to bring to the trial court's attention any perceived errors or forfeit the issue on appeal. Tentative decisions are commonplace in civil cases. Adopting the procedure in criminal sentencing hearings should cause no great burden. Nevertheless, we recognize there may be instances where the defendant was informed of the trial court's intended sentence and supporting reasons without benefit of a formalized tentative decision. In these cases, the focus should be on whether the record demonstrates defendant was apprised of the court's intended sentence and the reasons supporting it before the pronouncement of judgment. Consequently, tentative decisions are not mandatory. But it is the better practice. Arguments over whether the defendant waived sentencing issues are easily avoided when the trial court provides a tentative indication of the sentence and supporting reasons.
Here the record does not show defendants were apprised of the court's intended sentence. The probation report did not list use of the weapon as an aggravating circumstance, and the court did not indicate it was going to rely on this factor to aggravate the sentence. In short, defendants had no inkling the court would improperly use the same fact to both aggravate their sentence and impose the gun enhancement. Under these circumstances, Scott prohibits us from implying defendants waived or forfeited the issue on appeal. We remand for resentencing consistent with the guidelines expressed in this opinion.

*854 III[**]
WE CONCUR: SILLS, P.J., and MOORE, J.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.
[**] See footnote *, ante.