[No. S107167. Aug. 21, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
ALEJANDRO P. GONZALEZ et al., Defendants and Appellants.

## COUNSEL

Harvey L. Goldhammer, under appointment by the Supreme Court, for Defendant and Appellant Alejandro P. Gonzalez.

Deborah L. Hawkins, under appointment by the Supreme Court, for Defendant and Appellant Jaime Pano.

Bill Lockyer, Attorney General, David P. Druliner, Robert R. Anderson, Chief Assistant Attorneys General, Gary W. Schons, Assistant Attorney General, Steven T. Oetting, Pamela R. Ratner and Marilyn L. George, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KENNARD, J.—** ■ In *People v. Scott* (1994) 9 Cal.4th 331 [36 Cal.Rptr.2d 627, 885 P.2d 1040] (*Scott*), this court held that a party in a criminal case may not challenge the trial court's discretionary sentencing choices on appeal if that party did not object at trial. *Scott* stressed, however, that counsel must have a "meaningful opportunity to object [which] can occur only if, during the course of the sentencing hearing itself and before objections are made, the parties are clearly apprised of the sentence the court intends to impose, and the reasons that support any discretionary sentencing choices." (*Id.* at p. 356.) To effectuate that requirement, must the trial court issue a tentative decision before the sentencing hearing? The answer is "no."

I

As jewelry salesman Dominguez Sosa backed his car out of his garage, codefendants Alejandro Gonzalez and Jaime Pano accosted him at gunpoint and got in the car, ordering Sosa into the passenger seat. They threatened to harm Sosa's family if he did not cooperate, claiming that two people were in his garage waiting for instructions. After defendants drove with Sosa for several hours, taking his gold ring, the car stalled on the freeway shoulder.

Shortly thereafter, a patrol car with two officers pulled up. While the officers talked to defendants, Sosa alerted them to his capture by handing them an envelope on which he had written, "Help me. He's got a gun." Sosa later discovered that jewelry had been stolen from his home while defendants held him captive.

Defendants were charged with kidnapping for robbery (Pen. Code, § 209),[1] carjacking (§ 215, subd. (a)), second degree robbery (§ 211), criminal threats (§ 422), and kidnapping for carjacking (§ 209.5, subd. (a)). The information also alleged, as sentence enhancements, that each defendant used a firearm during the commission of these crimes (§ 12022.53, subd. (b)), and that defendant Gonzalez had served a prior prison term (§ 667.5, subd. (b)).

Defendants waived the right to a jury trial, and they agreed to submit the matter to the trial court based on the investigative reports and the transcript of the preliminary hearing. The court convicted both defendants of kidnapping (a lesser offense necessarily included in the charged crime of kidnapping for robbery), as well as the charged crimes of carjacking, robbery, and criminal threats. The court acquitted defendants of kidnapping for carjacking. It found the firearm use enhancement to be true as to each defendant. Defendant Gonzalez admitted the prior prison term enhancement.

Each defendant's probation report listed the planned nature of the crimes as an aggravating circumstance, and defendant Gonzalez's report also mentioned that he was on parole when he committed the offenses. Defendant Gonzalez's probation report listed no mitigating circumstances, while defendant Pano's probation report listed his lack of a prior criminal record as the only mitigating circumstance. The probation reports recommended that each defendant pay a restitution fine of $1,000.

At the sentencing hearing, Sosa requested the court to order defendants to pay restitution for jewelry that was stolen from his home while defendants had kidnapped him. He initially said his loss was "about $9,000," but he then corrected himself, stating that he had lost approximately $5,000 and that he had brought receipts with him to court. After listening to Sosa's statement, the court said it would "consider restitution."

After hearing arguments from the prosecutor and counsel for defendant Gonzalez, and a personal statement from defendant Pano, the trial court announced its sentence. For each defendant, it stayed execution of sentence for the charges of kidnapping and criminal threats. (§ 654.) It selected the crime of carjacking as the base term for each defendant and chose the

---

[1] All further statutory references are to the Penal Code.

aggravated term, nine years in prison, because they were armed when they committed that offense. It sentenced each defendant to one year in prison for robbery, to be served consecutive to the sentence for carjacking, and it sentenced each defendant to 10 consecutive years in prison for the firearm-use enhancement. It also sentenced defendant Gonzalez to one consecutive year for his prior prison term. Thus, the court sentenced Gonzalez to a total of 21 years in prison and Pano to 20 years. It also ordered defendants to pay restitution of $5,000 to Sosa, for which they were jointly and severally responsible, and it ordered each defendant to pay a restitution fine of $5,000.

Defendants objected to the restitution order, arguing that it was for a loss related to a crime they were neither charged with nor convicted of committing. The court responded: "The objection [is] noted for the record."

On appeal, defendants argued that in imposing sentence, the trial court had impermissibly relied twice on the fact that they were armed when they committed the crimes: first to impose the upper term for carjacking, and then to impose the firearm-use enhancement. They further argued that the restitution order violated their due process rights because the court had not given them notice and an opportunity to be heard, and that the restitution was improper because they were not convicted of stealing Sosa's jewelry. The Attorney General responded that the first two of these claims were not properly before the Court of Appeal because of defendants' failure to raise them in the trial court.

The Court of Appeal held that none of defendants' claims was barred on appeal. It reasoned that because the probation reports did not list firearm use as an aggravating circumstance, and the trial court did not indicate before it imposed sentence that it would use this circumstance as an aggravating factor, defendants did not know the trial court would impermissibly use this fact twice. Accordingly, the Court of Appeal held that the trial court did not apprise defendants of this aspect of its intended sentence and the reasons for its sentencing choices before it pronounced judgment, and therefore *Scott, supra,* 9 Cal.4th 331, did not bar them from challenging the sentence on this ground. The Court of Appeal also held that defendants could raise an appellate challenge to the trial court's restitution order on the ground that the trial court had ordered them to pay restitution without giving them notice and an opportunity to contest the restitution amount. Concluding that the trial court's sentence was improper in each of these respects, the Court of Appeal reversed the judgment and remanded the case to the trial court for resentencing.

We granted the Attorney General's petition for review.

## II

In *Scott*, this court prospectively announced a new rule: A party in a criminal case may not, on appeal, raise "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices" if the party did not object to the sentence at trial. (*Scott, supra*, 9 Cal.4th at p. 353.) The rule applies to "cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons" (*ibid.*), but the rule does not apply when the sentence is legally unauthorized (*id.* at p. 354).

*Scott* reasoned: "[C]ounsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing. Routine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention." (*Scott, supra*, 9 Cal.4th at p. 353.) Such a requirement would "reduce the number of errors committed in the first instance and preserve the judicial resources otherwise used to correct them." (*Ibid.*) *Scott* perceived no unfairness to the parties. It explained: "The parties have ample opportunity to influence the court's sentencing choices under the determinate scheme. As a practical matter, both sides often know before the hearing what sentence is likely to be imposed and the reasons therefor. Such information is contained in the probation report, which is required in every felony case and generally provided to the court and parties before sentencing. [Citations.] In anticipation of the hearing, the defense may file, among other things, a statement in mitigation urging specific sentencing choices and challenging the information and recommendations contained in the probation report. [Citations.] Relevant argument and evidence also may be presented at sentencing. [Citations.] [A] defense attorney who fails to adequately understand the available sentencing alternatives, promote their proper application, or pursue the most advantageous disposition for his client may be found incompetent." (*Scott, supra*, 9 Cal.4th at pp. 350–351.)[2]

But *Scott* went on to say: "[T]here must be a *meaningful opportunity to object* to the kinds of claims otherwise deemed waived by today's decision." (*Scott, supra*, 9 Cal.4th at p. 356, italics added.) "This opportunity can occur," *Scott* observed, "only if, during the course of the sentencing hearing itself and before objections are made, the parties are clearly apprised of the sentence the court intends to impose and the reasons that support any discretionary choices." (*Ibid.*)

---

[2] We also urge prosecutors, as officers of the court, to bring to the trial court's attention any errors they note in the court's sentence, even when they do not intend to raise those errors on appeal.

Defendant Pano argues that *Scott* requires trial courts to provide the parties with a tentative decision *before the sentencing hearing*, and defendant Gonzalez contends we should require the trial court to give tentative decisions in writing, 24 hours before the hearing. We disagree. *Scott* rejected the argument of the defendant in that case that "a rule requiring a contemporaneous objection to defects in the court's statement of reasons is impractical [because] it is unrealistic to expect counsel to comprehend, remember, and respond to the various sentencing factors and choices delivered orally by the court at the hearing." (*Scott, supra,* 9 Cal.4th at pp. 355–356.) *Scott* held that the parties need only be advised of the trial court's intended sentence "during the course of the sentencing hearing itself . . . ." (*Id.* at p. 356.)

As previously explained, the *Scott* rule applies when the trial court "clearly apprise[s]" the parties "of the sentence the court intends to impose and the reasons that support any discretionary choices" (*Scott, supra,* 9 Cal.4th at p. 356), and gives the parties a chance to seek "clarification or change" (*id.* at p. 351) by objecting to errors in the sentence. ■ The parties are given an adequate opportunity to seek such clarifications or changes if, at *any time* during the sentencing hearing, the trial court describes the sentence it intends to impose and the reasons for the sentence, and the court thereafter considers the objections of the parties before the actual sentencing. The court need not expressly describe its proposed sentence as "tentative" so long as it demonstrates a willingness to consider such objections. If the court, after listening to the parties' objections, concludes that its proposed sentence is legally sound, it may simply state that it is imposing the sentence it has just described, without reiterating the particulars of that sentence. By contrast, if the trial court finds that one of the parties has raised a meritorious objection to the proposed sentence, it should alter its sentence accordingly.

It is only if the trial court fails to give the parties any meaningful opportunity to object that the *Scott* rule becomes inapplicable. This occurred in *People v. Superior Court (Dorsey)* (1996) 50 Cal.App.4th 1216 [58 Cal.Rptr. 165]. There, the trial court placed the defendant on probation in the "interest of justice," even though he was presumptively ineligible. After asking the defendant if he accepted the terms of probation, the trial court immediately declared a recess without hearing from either party. Because of the immediate recess, the Court of Appeal held that "the prosecutor had no opportunity, meaningful or otherwise, to object." (*Id.* at p. 1224.) Accordingly, *Dorsey* correctly held that the prosecution could challenge the sentence on appeal.[3]

---

[3] In *People v. Middleton* (1997) 52 Cal.App.4th 19 [60 Cal.Rptr.2d 366], the trial court issued a tentative ruling before the sentencing hearing. During argument, the defendant did not object to the intended sentence. Therefore, the Court of Appeal held that he had not preserved his appellate challenge to the trial court's sentence on the ground that the trial court gave

Both defendants argue that the due process clause of the Fourteenth Amendment to the federal Constitution requires advance notice of the trial court's intended sentence. They do not assert there is an independent due process right that, if not followed to the letter by the sentencing court, would create its own ground for appellate reversal; nor would such an argument be tenable. Rather, defendants argue that if they do not receive adequate notice in the trial court, the due process clause entitles them to raise on appeal any sentencing error not objected to in the trial court.

In support, defendants cite *Burns v. United States* (1991) 501 U.S. 129 [115 L.Ed.2d 123, 111 S.Ct. 2182] (*Burns*). At issue in *Burns* was whether a federal trial court must notify the defendant before the sentencing hearing if it intends to impose a sentence above the range established by the federal sentencing guidelines. In a five-to-four decision, the high court held that such notification was implicit in rule 32 of the Federal Rules of Criminal Procedure. It explained: "Notwithstanding the absence of express statutory language, this Court has readily construed statutes that authorize deprivations of liberty or property to require that the Government give affected individuals *both* notice *and* a meaningful opportunity to be heard." (*Burns, supra*, 501 U.S. at pp. 137–138 [115 L.Ed.2d. at pp. 132–133].) It noted that if it were to hold that rule 32 did not require such notice, it "would then have to confront the serious question whether notice . . . is mandated by the Due Process Clause" (*Burns, supra*, 501 U.S. at p. 138 [115 L.Ed.2d. at p. 133]), and it quoted authority stating that the high court generally construes laws to avoid " 'serious constitutional problems' " (*ibid.*).

Although *Burns* acknowledged that whether the due process clause requires a trial court to give advance notice of an unexpectedly high sentence poses a "serious question" (*Burns, supra*, 501 U.S. at p. 138 [115 L.Ed.2d. at p. 133]), it did not decide when, if ever, the due process clause would require such notice.

To determine whether notice is required, both parties urge us to apply the test the high court set forth in *Mathews v. Eldridge* (1976) 424 U.S. 319 [47 L.Ed.2d 18, 96 S.Ct. 893]. That test requires consideration of three factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural

---

inadequate reasons for ordering that the sentence on one count be served consecutively. In dicta, the Court of Appeal said that *Scott* "did announce significant restrictions on the waiver rule," and that the rule does not apply "if the sentencing court did not provide a tentative ruling which includes the court's discretionary choices and supporting reasons." (*Middleton,* at p. 37.) To the extent *Middleton* may be read as saying that *Scott*'s purpose was to impose "significant restrictions on the waiver rule" or that it requires trial courts to give a tentative ruling before the sentencing hearing, *Middleton* is inconsistent with *Scott* and is disapproved.

safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Id.* at p. 335 [47 L.E.2d. at p. 903].)

It is not clear whether the *Mathews* test is applicable here. Recently, the high court had this to say about that test: "The *Mathews* balancing test was first conceived in the context of a due process challenge to the adequacy of administrative procedures used to terminate Social Security disability benefits. Although we have since invoked *Mathews* to evaluate due process claims in other contexts, [citation], we have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims. Since *Mullane* [*v. Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306 [94 L.Ed. 865, 70 S.Ct. 652]] was decided, we have regularly turned to it when confronted with questions regarding the adequacy of the method used to give notice." (*Dusenbery v. U.S.* (2002) 534 U.S. 161, 167–168 [151 L.Ed.2d 597, 605, 122 S.Ct. 694].)

*Mullane* requires a reviewing court to determine whether the method of notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (*Mullane v. Central Hanover Bank & Trust Co., supra,* 339 U.S. at p. 314 [94 L.Ed. at p. 873]; see also *Dusenbery v. U.S., supra,* 534 U.S. at p. 168 [151 L.Ed. at p. 605].) At issue here is the adequacy of the method used to give notice of the trial court's intended sentence, so *Mullane* may apply, although the high court has not considered whether that test applies in criminal cases.

■ Regardless of which test applies, however, we find nothing in the Fourteenth Amendment's due process clause that would require advance notice by a trial court of its intended sentence. Although defendants have an important private interest in receiving a fair sentence, the risk that the *Scott* rule will result in a deprivation of that interest is not substantial. Under California law, information pertinent to sentencing is frequently contained in the presentence probation report, thus enabling the parties to anticipate the trial court's sentencing choice and its reasons. (See *Scott, supra,* 9 Cal.4th at p. 351.) In the rare instance where the actual sentence is unexpected, unusual, or particularly complex, the parties can ask the trial court for a brief continuance to research whether an objection is warranted, or for permission to submit written objections within a specified number of days after the sentencing hearing. Such a procedure would satisfy a requirement, if any, under the due process clause of advance notice of the trial court's sentence.

Defendants also argue that the due process provisions of the California Constitution (Cal. Const., art. I, §§ 7, 15) require advance notice of the trial

court's intended sentence. The California test for due process violations is slightly different from that used by the United States Supreme Court. (See *In re Sade C.* (1996) 13 Cal.4th 952, 991, fn. 18 [55 Cal.Rptr.2d 771, 920 P.2d 716]; see also *People v. Ramirez* (1979) 25 Cal.3d 260, 269 [158 Cal.Rptr. 316, 599 P.2d 622].) ■ But defendants have not cited, nor have we found, anything in the language or history of the state provisions, or the cases interpreting them, suggesting that they impose a notice requirement greater than that required by the federal Constitution in this context.

Finally, we apply *Scott, supra*, 9 Cal.4th 331, to the facts of this case.

■ The trial court prefaced its sentence with the words, "Defendants *are sentenced* as follows." (Italics added.) These words may have implied to the parties that the trial court had already made its sentencing decision. Because the court had not previously notified the parties that it intended to rely on defendants' firearm use as a reason for its sentence, it should have more clearly given the parties a meaningful opportunity to object by saying it was announcing proposed sentences for each defendant and its reasons for the sentences, that the prosecutor and defendants were entitled to object, and that if the objections were meritorious it would alter the sentences appropriately.

Nevertheless, the record shows that after the trial court had stated defendants' sentences and its reasons for them, defendants *did* object, although not on two of the grounds they now wish to raise on appeal. The court did not tell defendants their objection was untimely or impermissible; instead, it considered and rejected the objection. Thus, the court did give defendants a "meaningful opportunity to object" as required by *Scott, supra*, 9 Cal.4th at page 356. (See *People v. Downey* (2000) 82 Cal.App.4th 899, 916 [98 Cal.Rptr.2d 627] [*Scott* bar applies when trial court allowed parties to interrupt to make objections while it was pronouncing sentence].)

Defendants objected to the trial court's sentences on only one of the three grounds they raised on appeal (not addressed by the Court of Appeal): that the court should not have ordered them to pay restitution for items taken from victim Sosa's house when they had not been convicted of stealing those items. Thus, on appeal they may challenge their sentences on that ground. Defendants did not, however, object on the two other grounds they now assert: that the trial court improperly relied on their use of firearms in committing the charged crimes in two different aspects of their sentences, and that the court imposed restitution without giving them a hearing regarding the amount of Sosa's loss. Therefore, they may not now raise these claims.

## DISPOSITION

We reverse the judgment of the Court of Appeal, and we remand the matter to that court for further proceedings consistent with this opinion.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.