Jaime PANO, Petitioner,

v.

**G.J. GIURBINO, Warden, Respondent.**

**No. SACV03–1572–GLT(RC).**

United States District Court, C.D. California.

Nov. 19, 2004.

Jaime Pano, Imperial, CA, pro se.

Marilyn L. George, CAAG Office of Attorney General of California, San Diego, CA, for Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

TAYLOR, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the petitions and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, and has made a de novo determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition and dismissing the action.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on the parties.

## JUDGMENT

Pursuant to the Order of the Court adopting the findings, conclusions, and recommendations of United States Magistrate Judge Rosalyn M. Chapman,

IT IS ADJUDGED that the Petition for Writ of Habeas Corpus is denied and the action is dismissed.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

This Report and Recommendation is submitted to the Honorable Gary L. Taylor, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 01–13 of the United States District Court for the Central District of California.

### BACKGROUND

#### I

On June 8, 1999, in Orange County Superior Court case no. 98CF2766, the court convicted petitioner Jaime Pano[1] of one count of kidnapping in violation of California Penal Code ("P.C.") § 207 (count 1), one count of carjacking in violation of P.C. § 215(a) (count 2), one count of second-degree robbery in violation of P.C. §§ 211, 212.5(c) and 213(a)(2) (count 3), and one count of making terrorist threats in violation of P.C. § 422 (count 4), and, as to all counts, the court found that petitioner used a firearm within the meaning of P.C. § 12022.53(b); however, petitioner was found not guilty of the crime of kidnapping for carjacking (count 5). CT 134–35. Petitioner was sentenced to the total term of

---

1. The petitioner was tried jointly with co-defendant Alejandro P. Gonzalez. Clerk's Transcript ("CT") 4–191.

20 years in state prison. CT 182–84, 190–91.

Petitioner (and Gonzalez) appealed their sentences to the California Court of Appeal, which, in a partially published opinion filed April 19, 2002, and modified May 20, 2002, affirmed petitioner's convictions but reversed and remanded the matter for resentencing. *People v. Gonzalez,* 118 Cal. Rptr.2d 850 (2002); Lodgment nos. 4–13. On May 29, 2002, the People filed a petition for review in the California Supreme Court, which granted review and, in a published opinion filed August 21, 2003, reversed the California Court of Appeal and affirmed the judgment. *People v. Gonzalez,* 31 Cal.4th 745, 3 Cal.Rptr.3d 676, 74 P.3d 771 (2003); Lodgment nos. 14–20.

## II

The California Supreme Court, in reversing the California Court of Appeal, succinctly stated the facts and circumstances underlying petitioner's conviction:

As jewelry salesman Dominguez Sosa backed his car out of his garage, [petitioner and] co-defendant[ ] Alejandro Gonzalez accosted him at gunpoint and got in the car, ordering Sosa into the passenger seat. They threatened to harm Sosa's family if he did not cooperate, claiming that two people were in his garage waiting for instructions. After [petitioner and Gonzalez] drove with Sosa for several hours, taking his gold ring, the car stalled on the freeway shoulder. Shortly thereafter, a patrol car with two officers pulled up. While the officers talked to [petitioner and Gonzalez], Sosa alerted them to his capture by handing them an envelope on which he had written, "Help me. He's got a gun." Sosa later discovered that jewelry had been stolen from his home while [petitioner and Gonzalez] held him captive.

*Gonzalez,* 31 Cal.4th at 748–49, 3 Cal. Rptr.3d at 678, 74 P.3d 771.[2]

2. The California Court of Appeal made even more extensive findings regarding the facts and circumstances underlying petitioner's conviction:

Dominguez Sosa, a part-time jewelry salesman working out of his home, left his residence in the early evening to meet "Jorge," a potential customer. Sosa returned home when the putative buyer did not keep the appointment. Later, Jorge called and made arrangements with Sosa for another rendezvous. Sosa left the house without his inventory of jewelry, storing it in a locked closet. [¶] As Sosa backed his car out of the driveway, Gonzalez approached and identified himself as Jorge. Taking a position in the front passenger seat, Gonzalez pulled a handgun from his waistband, and ordered Sosa to drive. [Petitioner] emerged from the bushes and got in the back seat. [Petitioner] took the gun and ordered Sosa into the passenger seat. Gonzalez threatened to harm Sosa's family if he did not cooperate, claiming two confederates were in his garage awaiting instructions. Taking the wheel, Gonzalez drove off with his captive. [¶] Sosa's ordeal lasted several hours. During the drive, [petitioner] pointed the handgun at Sosa. Gonzalez took Sosa's ring and [petitioner] demanded his wallet. The kidnappers drove around Santa Ana before heading for Los Angeles. On the way, both men asked Sosa about his jewelry business. Gonzalez asked if any family member slept in the living room, and admitted he had been spying on Sosa and his sister for several days. [¶] In Los Angeles, Gonzalez made numerous stops to place telephone calls. Eventually, the kidnappers headed back to Orange County. But Sosa's car stalled on the freeway near Anaheim. Gonzalez parked on the right shoulder and activated the emergency lights. [¶] Two police officers pulled over when they spotted Sosa's disabled Honda Civic. Parked behind it was a Honda hatchback. Gonzalez approached the officers and explained his car overheated and his friend had stopped to assist. Satisfied with the explanation, one officer directed Gonzalez to merge onto the traffic lane. As Gonzalez reen-

## III

On September 20, 2003, petitioner filed the pending habeas corpus petition, raising the sole claim: "Federal and State due process guarantees require trial courts to give defendants notice and a meaningful opportunity to object before waiver applies to a claim of sentence error." Petition at 5. Respondent answered the petition on March 5, 2004, but petitioner did not file a traverse.

## DISCUSSION

## IV

The Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA") "circumscribes a federal habeas court's review of a state court decision." *Lockyer v. Andrade,* 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Wiggins v. Smith,* 539 U.S. 510, 518–19, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amended by the AEDPA, 28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

▮▮▮ "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *Bell v. Cone,* 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the case." *Williams,* 529 U.S. at 413, 120 S.Ct. at 1523; *Andrade,* 538 U.S. at 75, 123 S.Ct. at 1174.[3]

▮▮▮ "Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Andrade,*

---

tered the Civic, the driver of the other car abruptly pulled away. Gonzalez tried to follow suit, but the alarm sounded when he tried to start the car. The officer approached and ordered all three men out of the car. Sosa surreptitiously displayed a note warning of his plight. The officer drew his gun. Sosa revealed the plot, and the kidnappers were arrested. [¶] Sosa later discovered his jewelry had been stolen from his home. The closet door was unlocked, but there were no signs of forced entry.
*Gonzalez,* 118 Cal.Rptr.2d at 851.

**3.** "An *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Woodford v. Visciotti,* 537 U.S. 19, 25, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (per curiam) (citations omitted; emphasis in original); *Bell,* 535 U.S. at 694, 122 S.Ct. at 1850. Thus, "even if [this Court] *concludes* that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." *Penry v. Johnson,* 532 U.S. 782, 792–93, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001); *Wiggins,* 539 U.S. at 520–21, 123 S.Ct. at 2535.

538 U.S. at 71, 123 S.Ct. at 1172 (quoting *Williams,* 529 U.S. at 412, 120 S.Ct. at 1523). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade,* 538 U.S. at 71–72, 123 S.Ct. at 1172; *Yarborough v. Alvarado,* 541 U.S. 652, 124 S.Ct. 2140, 2147, 158 L.Ed.2d 938 (2004). "If there is no Supreme Court precedent that controls a legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law." *Stevenson v. Lewis,* 384 F.3d 1069, 1071 (9th Cir.2004); *Brewer v. Hall,* 378 F.3d 952, 955 (9th Cir.2004).[4]

█ In determining whether a state court's decision is either "contrary to" or an "unreasonable application" of the AEDPA, this court must examine the last reasoned decision by the state court. *Kennedy v. Lockyer,* 379 F.3d 1041, 1052 (9th Cir.2004); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir.2004). In this case, the California Supreme Court reached the merits of petitioner's claim when it reversed the California Court of Appeal. Therefore, in addressing petitioner's claim, this Court will consider the California Supreme Court's reasoning.

## V

█ " 'The fundamental requisite of due process of law is the opportunity to be heard[,]' " *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 339 U.S. 306 (1950) (citation omitted); *Ford v. Wainwright,* 477 U.S. 399, 413, 106 S.Ct. 2595, 2603, 91 L.Ed.2d 335 (1986), which " 'has little reality or worth unless one is informed' that a decision is contemplated." *Burns v. United States,* 501 U.S. 129, 136, 111 S.Ct. 2182, 2186, 115 L.Ed.2d 123 (1991) (quoting *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657). For this reason, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane,* 339 U.S. at 314, 70 S.Ct. at 657.

█ In this case, the petitioner's sole claim is that due process requires a trial court provide a defendant with advanced notice of, and a written statement of reasons supporting, a trial court's tentative sentence so a defendant might have a meaningful opportunity to object. Complaint at 5. The California Supreme Court carefully considered, and denied, petitioner's claim, holding:

[W]e find nothing in the Fourteenth Amendment's due process clause that would require advance notice by a trial court of its intended sentence. Although defendants have an important private interest in receiving a fair sentence, the risk that the *Scott*[5] rule will

---

**4.** Further, under the AEDPA, a federal court shall presume that a determination of factual issues made by a state court is correct, and petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**5.** In *People v. Scott,* 9 Cal.4th 331, 36 Cal. Rptr.2d 627, 885 P.2d 1040 (1994), the California Supreme Court "held that a party in a criminal case may not challenge the trial court's discretionary sentencing choices on appeal if that party did not object at trial. *Scott* stressed, however, that counsel must have a 'meaningful opportunity to object ... [which] can occur only if, during the course of the sentencing hearing itself and before objections are made, the parties are clearly apprised of the sentence the court intends to impose, and the reasons that support any

result in a deprivation of that interest is not substantial. Under California law, information pertinent to sentencing is frequently contained in the presentence probation report, thus enabling the parties to anticipate the trial court's sentencing choice and its reasons. In the rare instance where the actual sentence is unexpected, unusual or particularly complex, the parties can ask the trial court for a brief continuance to research whether an objection is warranted, or for permission to submit written objections within a specified number of days after the sentencing hearing. Such a procedure would satisfy a requirement, if any, under the due process clause of advance notice of the trial court's sentence.

*Gonzalez*, 31 Cal.4th at 754, 3 Cal.Rptr.3d at 683, 74 P.3d 771 (citation omitted, footnote added).

As an initial matter, petitioner does not contend the trial court's sentencing decision was erroneous or that it contravened California law.[6] To the contrary, petitioner's sentence was well within the confines of California law. *See, e.g.*, P.C. § 215(b) (1999) ("Carjacking is punishable by imprisonment in the state prison for a term of three, five, or nine years."); P.C. § 12022.53(a)(5), (b) (1999) ("Notwithstanding any other provision of law, any person who is convicted of a felony specified in subdivision (a), [including carjacking in violation of P.C. § 215,] and who in the commission of that felony personally used a firearm, shall be punished by a term of imprisonment of 10 years in the state prison, which shall be imposed in addition and consecutive to the punishment prescribed for that felony."); P.C. § 213(a)(2) (1999) ("Robbery of the second degree is punishable by imprisonment in the state prison for two three or five years."); and P.C. § 1170.1(a) (1999) ("subordinate term for each consecutive offense ... shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction. ..."). Moreover, petitioner's defense counsel filed a sentencing memorandum, which clearly recognized the sentencing options before the trial court and argued for a lower sentence based on the mitigating factors of the crime. A.R. 138–41. Further, petitioner's defense counsel was provided an opportunity to orally argue sentencing factors before the trial court pronounced sentence,[7] and petitioner per-

---

discretionary sentencing choices.'" *Gonzalez*, 31 Cal.4th at 748, 3 Cal.Rptr.3d at 678, 74 P.3d 771 (citing *Scott*, 9 Cal.4th at 356, 36 Cal.Rptr.2d at 642, 885 P.2d 1040).

6. The California Supreme Court made the following factual findings in denying petitioner's claim:

Each defendant's probation report listed the planned nature of the crimes as an aggravating circumstance ... and defendant Gonzalez's report also mentioned that he was on parole when he committed the offenses. ... [D]efendant Pano's probation report listed his lack of a prior criminal record as the only mitigating circumstance.... After hearing arguments from the prosecutor and counsel for defendant Gonzalez, and a personal statement from defendant Pano, the trial court announced

its sentence. For each defendant, it stayed execution of sentence for the charges of kidnapping and criminal threats. ([P.C.] § 654.) It selected the crime of carjacking as the base term for each defendant and chose the aggravated term, nine years in prison, because they were armed when they committed that offense. It sentenced each defendant to one year in prison for robbery, to be served consecutive to the sentence for carjacking, and it sentenced each defendant to 10 consecutive years in prison for the firearm-use enhancement.... Thus, the court sentenced ... Pano to 20 years.

*Gonzalez*, 31 Cal.4th at 749–50, 3 Cal.Rptr.3d at 679, 74 P.3d 771.

7. Trial counsel declined such opportunity after making sure the trial court had read his sentencing brief and the probation and sen-

sonally addressed the trial court before sentence was imposed.[8]  RT 7/16/99 18:18–20:4.  In other words, contrary to petitioner's contention, petitioner was well aware of his potential sentence, and was provided ample opportunity to comment on the sentence and to assure the trial court had accurate and complete sentencing information.  Therefore, there was no due process violation.  *See United States v. Brady,* 895 F.2d 538, 542 (9th Cir.1990) ("In the sentencing context, '[d]ue process requires that a defendant be given an opportunity to assure the accurate presentation of reliable sentencing information to the [trial] court.'" (citation omitted)).

More importantly, no Supreme Court authority establishes that a state court criminal defendant has a constitutional right to advance written notice of a tentative sentencing decision.  *See,* e.g., *United States v. Reynoso,* 254 F.3d 467, 473 (3d Cir.2001) ("Neither the Supreme Court nor this one have held that the Due Process Clause entitles a defendant to advance notice of the information upon which he or she will be sentenced or to comment meaningfully on that evidence.").  Certainly, Burns does not stand for that proposition.  Rather, in Burns, the Supreme Court interpreted Federal Rule of Criminal Procedure 32 to require that before a federal court "can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government, ... the district court [must] give the parties reasonable notice that it is contemplating such a ruling." *Burns,* 501 U.S. at 138, 111 S.Ct. at 2187.  "Otherwise, the opportunity to comment afforded by Rule 32 would be meaningless because the

guidelines 'place essentially no limit on the number of potential factors that may warrant a departure' and 'no one is in a position to guess when or on what grounds a district court might depart.'" *United States v. Lopez,* 258 F.3d 1053, 1055 (9th Cir.2001)(quoting *Burns,* 501 U.S. at 136–37, 138, 111 S.Ct. at 2182), *cert. denied,* 535 U.S. 962, 122 S.Ct. 1376, 152 L.Ed.2d 368 (2002).  Specifically, the Supreme Court noted that it interpreted Rule 32 as it did so it would not "have to confront the serious question whether notice in this setting is mandated by the Due Process Clause." *Burns,* 501 U.S. at 138, 111 S.Ct. at 2187.  Thus, Burns did not address whether due process requires a federal district court to provide a criminal defendant with an advance written statement of its tentative sentencing decision, *id.* at 132–39, 111 S.Ct. at 2184–88; *Kell v. United States Parole Comm'n,* 26 F.3d 1016, 1023 (10th Cir.1994), let alone whether due process requires a state court to provide a criminal defendant with an advance written statement.  For these reasons, the California Supreme Court's denial of petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established federal law.  *Stevenson,* 384 F.3d at 1069, 1070–71; *Brewer,* 378 F.3d at 955.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order:  (1) approving and adopting the Report and Recommendation;  (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be

---

tencing reports.  Reporter's Transcript ("RT") 7/16/99 18:18–19:3.

**8.**  In addressing the trial court, petitioner acknowledged it was he, and not Gonzalez, who had the gun throughout the crime.  RT 7/16/99 18:12–15.

entered denying the petition and dismissing the action.

October 5, 2004.