Filed 8/20/14  P. v. Spates CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049200 |
| v. | (Super. Ct. No. 08HF2209) |
| ARTURO SPATES III, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Daniel Barrett McNerney, Judge.  Affirmed.

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr. and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

\*         \*         \*

A jury convicted defendant Arturo Spates III of pimping (Pen. Code, § 266h, subd. (a))[1] and pandering (§ 266i, subd. (a)(2).[2] The court sentenced defendant to the upper term of six years in state prison for pimping (§ 266h, subd. (a) ["three, four, or six years"]) and stayed execution of sentence on the pandering conviction (see § 654). Defendant claims the court abused its discretion by selecting the upper term of six years. We affirm.

FACTS

*Evidence at Trial*

Defendant met Molly (who was 18 or 19 years old at the time) in July 2008 at a San Francisco strip club where Molly worked. Defendant began dating Molly and offered to employ her in his escort business, which he represented did not involve sexual activity. Defendant and Molly started a sexual relationship. Defendant began supplying Molly with methamphetamine.

Molly began working for defendant's escort service, which involved having sex with clients for money. Defendant took all of the money Molly received from clients and controlled every aspect of Molly's life. Molly followed defendant's orders. Defendant controlled Molly by yelling at her.

Molly was arrested in October 2008, at which time she stopped using drugs and moved back in with a family member in San Francisco. But, by a ruse involving an offer to retrieve Molly's property, defendant convinced Molly to return with him to Orange County. Molly's relative asked police to investigate; a police officer located

---

[1] All statutory references are to the Penal Code.

[2] The prosecutor dismissed count 3, misdemeanor domestic violence battery (§ 243, subd. (e)(1)), after the jury was unable to reach a unanimous verdict on this count.

Molly through a craigslist advertisement and made contact with Molly by pretending he wished to pay her for sex. Molly lured defendant back to the motel room, where he was arrested with $1,500 in currency, unused condoms, a camera, a computer, and business cards advertising erotic services. The computer contained data suggesting it had been used to post Molly's pictures in advertisements on Craigslist.

*Probation Report*

Defendant was 38 years old at the time of his conviction. Defendant talked to the probation officer. He "acknowledged his actions were wrong because they were illegal; however, he indicated everything else that the victim claimed was not the truth."

Molly submitted a letter to the probation department expressing her gratitude to those who helped her get out of defendant's control and explained she "was emotionally abused, manipulated, brainwashed, scared, and physically abused" by defendant.

Defendant has a lengthy record of contacts with the criminal justice system. He was referred to probation at the age of 12 for a burglary offense. He was committed to the California Youth Authority at the age of 15 for attempted murder, in a case in which he shot the victim in the face. From 1995 (age 22) to 2008 (age 34), defendant had approximately 10 incidents in which he was arrested for the alleged commission of crimes, although it appears these cases were dismissed without trials or convictions. Several of these incidents suggest defendant was involved in prostitution, including one incident in which he admitted in his interview with a probation officer that he met teenage girls (two of whom turned out to be 14) in Arizona and transported the girls to Los Angeles, whereupon the girls engaged in prostitution at the direction of defendant and another man. Addressing another incident in which pimping charges were alleged then dismissed, defendant responded to the probation officer, "'I'm a ladies man and I

3

influence ladies to do things and this happened more than once in my life. I guess it's kind of immoral but it depends on what state you live in.'"

Defendant was on probation at the time of sentencing for a federal pimping charge (to wit, transporting a 14-year-old female from Virginia to Las Vegas for the purposes of prostitution). Defendant pleaded guilty and was convicted of this offense in January 2010, but it actually occurred in 2007 (prior to the events in the instant case).

*Sentencing Hearing*

The prosecutor requested imposition of an aggravated, six-year prison term "based on defendant's history, based on the lack of remorse, based on his failure to accept responsibility." Defendant requested that the court impose a middle-term, four-year sentence, based on his recent performance on federal probation and the regret he expressed for participating in illegality. Defense counsel noted, "the criminal history, the federal offense I think is probably too much for the court to even consider low term, but I do think midterm is appropriate here."

The court selected the aggravated term of six years in state prison. The court stated its reasons as follows: "[Y]our pimping activities have taken you all over the country, San Francisco, Los Angeles, Denver, Phoenix, back east, . . . wherever the federal case was. I mean, virtually your entire adult life you have been in the business of human slavery. . . . I know that some people try to glorify the business as this is just a professional enterprise, like making cars or bank loans or whatever, but we all know it's not that. And you know it's not that."

"You're very good at what you've been doing. Appear to have been able to operate as a successful pimp, again, most of your adult life. And . . . the gals have come in all shapes and sizes and colors and ages, as young as 14 years old. And I just look at . . . your upbringing and I look at this profession you have chosen to involve yourself in and just can't reconcile the two, how a guy who is equipped with all the tools that your

4

family gave you in terms of how to live your life and how to treat other people could choose this particular occupation. But my only recourse is to lock you away from these women as long as I possibly can to at least keep them safe from the predatory practices you have been engaging in for the past at least 15 years."

"The history in this regard, particularly in light of the federal case, which, I understand the conviction was following the conduct that's alleged in this case, but the behavior that was the subject matter of that conviction preceded this, it's just a course of conduct that my job is to make sure I do everything I can to stop it for as long as I can. Because it [has] been going on for so long, because it [has] involved so many young girls and because it's a business that . . . you have devoted a majority of your life to, I find the circumstances surrounding the current offense, particularly in light of your history involving this kind of conduct, to be factors in aggravation and I do not find mitigation to counterbalance that."

DISCUSSION

Defendant's sole contention on appeal is that the court erred by selecting the upper-term sentence of six years in prison for his pimping conviction. Defendant claims the "general objectives of sentencing and the interests of justice were not served by such an excessive sentence." Defendant also asserts "the court erroneously relied on his federal conviction, as well as his prior arrests, as a basis for the aggravated term imposed."[3] We may reverse only if the court abused its discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)

---

[3] It appears defendant forfeited this specific contention by failing to raise it below. (See *People v. Gonzalez* (2003) 31 Cal.4th 745, 751-752; *People v. Scott* (1994) 9 Cal.4th 331, 356 ["complaints about the manner in which the trial court exercises its sentencing discretion and articulates it supporting reasons cannot be raisd for the first time on appeal"].) But because defendant alternately claims ineffective assistance of

5

A pimping conviction "shall be punishable by imprisonment in the state prison for three, four, or six years." (§ 266h, subd. (a).) "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court. . . . In determining the appropriate term, the court may consider the record in the case, the probation officer's report, . . . and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, . . . and any further evidence introduced at the sentencing hearing. The court shall select the term which, in the court's discretion, best serves the interests of justice. The court shall set forth on the record the reasons for imposing the term selected . . . ." (§ 1170, subd. (b).)

"General objectives of sentencing include: [¶] (1) Protecting society; [¶] (2) Punishing the defendant; [¶] (3) Encouraging the defendant to lead a law-abiding life in the future and deterring him or her from future offenses; [¶] (4) Deterring others from criminal conduct by demonstrating its consequences; [¶] (5) Preventing the defendant from committing new crimes by isolating him or her for the period of incarceration; [¶] (6) Securing restitution for the victims of crime; and [¶] (7) Achieving uniformity in sentencing." (Cal. Rules of Court, rule 4.410(a).) "Because in some instances these objectives may suggest inconsistent dispositions, the sentencing judge must consider which objectives are of primary importance in the particular case. The sentencing judge should be guided by statutory statements of policy, the criteria in these rules, and the facts and circumstances of the case." (*Id*., rule 4.410(b).)

Circumstances in aggravation of the offense include "acts disclosing a high degree of cruelty, viciousness, or callousness" (Cal. Rules of Court, rule 4.421(a)(1)); a "particularly vulnerable" victim (*id*., rule 4.421(a)(3)); inducing "others to participate in the commission of the crime or [occupying] a position of leadership or dominance" (*id*.,

counsel for the failure to object to the court's reliance on these factors, we will address the merits of defendant's claims.

6

rule 4.421(a)(4)); executing a crime in a manner indicating "planning, sophistication, or professionalism" (*id*., rule 4.421(a)(8); and taking "advantage of a position of trust or confidence to commit the offense" (*id*., rule 4.421(a)(11)).  Aggravating factors relating to the defendant include "prior convictions as an adult or sustained petitions in juvenile delinquency proceedings [that] are numerous or of increasing seriousness."  (*Id*., rule 4.421(b)(2).)  "The enumeration in these rules of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria reasonably related to the decision being made.  Any such additional criteria must be stated on the record by the sentencing judge."  (*Id*., rule 4.408.)

In selecting the upper term, the court focused on defendant's pimp-related criminal history, as indicated by his federal conviction and his multiple arrests (several of which explicitly pertained to prostitution), in conjunction with the circumstances of the charged crime (involving Molly).  The court found defendant's longstanding commitment to sexually exploiting girls and young women to be outrageous.  The court elected to incapacitate defendant for as long as possible to protect society (and in particular the vulnerable victims he plied his trade upon).  This was a legitimate weighing of the purposes of punishment and all of the particular circumstances in this case.

Defendant takes issue with the use of the federal conviction because defendant was not convicted in federal court until after his conduct in the instant case.  But while "the 'prior' convictions and prison terms referred to" as an aggravating factor in the California Rules of Court "are limited to those occurring prior to the currently charged offense," the sentencing judge is not limited to those factors.  (*People v. Gonzales* (1989) 208 Cal.App.3d 1170, 1172.)  Moreover, "[i]t is now well established that a probation report may refer to an arrest that did not result in a conviction, if supporting factual information is included and the information is not presented in a misleading manner."  (*People v. Ratcliffe* (1981) 124 Cal.App.3d 808, 823.)  Defendant himself confirmed the details of his involvement in prostitution in connection with many

7

of the arrests in an interview with a probation officer.[4]  Defendant provides no compelling authority for the proposition that the court erred by relying on defendant's federal offense or his prior prostitution-related arrests to impose the upper term of six years.

## DISPOSITION

The judgment is affirmed.


IKOLA, J.

WE CONCUR:


ARONSON, ACTING P. J.


FYBEL, J.

---

[4]    Defendant nitpicks at the probation report, which he claims is insufficiently clear with regard to when and to whom defendant made his statements.  But it is clear defendant talked to a probation officer, and a reasonable inference is that defendant's commentary with regard to these individual arrests was provided to the probation officer as part of his interview.  Defendant certainly did not challenge the accuracy of anything in the probation report at the sentencing hearing.