Filed 6/30/21  P. v. Morrison CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE, | C091990 |
| Plaintiff and Respondent, | (Super. Ct. No. CR037598) |
| v. | |
| JOHN ALLEN MORRISON, | |
| Defendant and Appellant. | |

Defendant John Allen Morrison pleaded guilty to the continuous sexual abuse of a minor in an open plea agreement with a maximum sentence of 16 years in state prison. The trial court accepted the plea and later imposed the maximum sentence.  Defendant timely appealed.  He contends the court abused its discretion in imposing the maximum sentence by considering unreliable hearsay evidence, citing facts that were elements of the offense, and repeatedly using the same facts to justify the upper term.  To the extent he failed to object below, he argues ineffective assistance of counsel.

We conclude that with one exception, the consideration of hearsay evidence, defendant has forfeited his challenges to the trial court's considerations by failing to

1

object.  Because he has failed to establish prejudice stemmed from the lack of objection, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The parties stipulated to the police report as the factual basis for defendant's plea. The report itself is not in the record, so we draw our summary from the probation report's summary of the police report.

In July 2019, S.M. and D.M. called law enforcement to report that their minor daughter, P.M., told a camp counselor defendant had molested her.  After P.M. returned from camp, P.M.'s mother reported that P.M. said that when defendant, a family friend, would come to visit, he would come into her room at night while she was sleeping and touch her bare breasts and genitals.  P.M.'s mother then called P.M.'s brother, J.W., and he disclosed that when he was 12 years old he visited defendant's home and defendant molested him as well; J.W. said that defendant held him down on a bed and performed oral sex on him.

The responding officer interviewed P.M., who told him that the sexual abuse occurred at her home and at a movie theater.  The abuse occurred every time defendant came to visit; he would touch her bare breasts and her bare vagina.

During a subsequent forensic interview, P.M. provided further details regarding the molestation.  Although she referred to defendant as her "uncle," they were not biologically related.  Defendant moved near the family and bought them gifts; he also took them on expensive trips to Hawaii and Disneyland.  He would lavish them with gifts after he molested her.  She said she did not disclose the molestation at the time given his generosity.

P.M. recalled that the abuse began in August 2010, when she was about six years old, after she stayed at defendant's house following a funeral; she awoke to him undressing her and touching her.  Later, after he moved nearby, he frequently would visit and engage in the same activity.  He also went to the movies with her family, and would

sit between her and her family with no one on the other side of P.M and fondle her. This continued until around 2015.

Defendant was interviewed by police in December 2019. When questioned about what he would say if P.M. said he had touched her, defendant responded, "I would have to say she is right." He also admitted touching P.M. where he "[s]houldn't have touched her." Defendant said he touched P.M. under her clothing and between her legs, including her vulva. He recalled touching P.M. multiple times when she was around seven years old while they were at the movies; he claimed P.M. would allow him to touch her and she would even "climax" when he would rub her. When asked if he had touched any other children, defendant said he had touched J.M. and had performed oral sex on him eight years earlier. He also admitted touching his own son. He said he touched children because he thought he would get excited by it, but he did not.

Defendant was arrested, and in January 2020, he was charged with unlawfully engaging in three or more acts of substantial sexual conduct and three or more lewd or lascivious acts with a child, P.M., on or between January 1, 2010, and December 31, 2012 (Pen. Code, §§ 288, 288.5, subd. (a); count 1),[1] and four counts of committing a lewd and lascivious act on P.M. during that same time period (§ 288, subd. (a); counts 2-5). As to each count, it was alleged that P.M. was under 14 years of age and that defendant had substantial sexual conduct with P.M. within the meaning of section 1203.066, subdivision (a)(8).

In February 2020, defendant agreed to plead guilty to count 1 in exchange for dismissal of the remaining charges. Under the terms of the open plea, the matter would be referred to probation for a report, and the trial court had discretion to sentence defendant up to the maximum of 16 years in state prison. In a sentencing memorandum,

---

[1] Further undesignated statutory references are to the Penal Code.

3

the People requested that the court sentence defendant to the 16-year upper term. They argued the upper term was warranted to protect society from defendant, who admitted having a history of prior sexual molestation. They noted there were two other victims who claimed to have been molested by defendant, including his own son, who told investigators that when he was around 10 years old his father began masturbating and orally copulating him, and that defendant had insisted the son reciprocate. The People also cited a statement from defendant's sister-in-law who said defendant had molested her for several years when she was a child. Because such evidence would have been admissible under Evidence Code section 1108 had the case gone to trial, they urged the court to consider it for purposes of sentencing.

The prosecution also asserted that if called as a witness, Detective Evans would testify to defendant's statements and admissions regarding other acts of molestation, including those against P.M.'s brother and his own son. In light of these witness statements and defendant's admissions, the prosecutor characterized defendant as a "serial offender" who should be sentenced to the upper term in order to deter him from committing further crimes.

As for factors in aggravation, the prosecutor argued defendant's crime involved threats of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1)),[2] the victim was particularly vulnerable (rule 4.421(a)(3)), the manner in which the crime was carried out indicated planning or sophistication (rule 4.421(a)(8)), and defendant took advantage of a position of trust or confidence to commit the offense (rule 4.421(a)(11)). The presentence probation report also recommended that the court sentence defendant to the upper term of 16 years in prison. The probation report cited many of the same aggravating factors as

---

[2] Further undesignated rule references are to the California Rules of Court.

highlighted by the prosecution, including that the manner of the crime showed sophistication and planning, and that defendant took advantage of a position of trust or confidence to commit the crimes by befriending the family and lavishing them with gifts to cover up the molestation.

At the sentencing hearing in April 2020, P.M.'s mother, father, and P.M. addressed the court regarding the impact defendant's crimes had on their family. The prosecutor argued at the hearing that even if the court did not consider evidence or testimony from the other alleged victims, defendant's continued sexual abuse of P.M. (to which he admitted and pleaded guilty) warranted an upper term. She emphasized the seriousness of defendant's crimes and the adverse effect it had on P.M. The only mitigating factor, she noted, appeared to be defendant's lack of any prior criminal history.

Defense counsel urged the court to impose the middle term of 12 years in prison. He argued that any statements from other alleged victims were hearsay that had never been verified, and that no charges were ever filed against defendant based on the allegations. While counsel conceded that defendant admitted what he had done to P.M. during his interview with Detective Evans and admitted to molesting his own son, counsel argued the court should disregard any information pertaining to the other alleged victims.

After considering the probation report, the People's written statement in aggravation as well as the victim's and her parents' statements, and the arguments of counsel, the trial court sentenced defendant to the upper term of 16 years in state prison. In so ruling, the court stated that it had not considered the statements given to investigating officers by defendant's other alleged victims, but had considered defendant's own admissions that he had molested his son and P.M.'s brother for purposes of analyzing public safety and recidivism.

In choosing the upper term, the trial court found P.M. was particularly vulnerable in light of her very young age and immaturity, that defendant, who was known as "Uncle

5

John," took advantage of a position of trust with the victim's family, and that he had planned the abuse so as to hinder discovery, abusing P.M. when others were asleep, out of the room, or during movies where he ensured no one was able to see what he was doing. The court further found that defendant had engaged in emotionally violent conduct that indicated a serious danger to society, and that his actions evidenced a high degree of callousness as he failed to contemplate the serious ramifications for P.M. Although the court acknowledged that defendant had no prior criminal record, on balance it found the aggravating factors outweighed any mitigating factors and imposed the upper term.

## DISCUSSION

Defendant contends the trial court abused its discretion in sentencing him to the upper term because it relied on unreliable hearsay statements of other alleged victims, and his admissions to law enforcement that he had engaged in lewd conduct with P.M. and other children, including P.M.'s brother and his own son. He also argues that the court erred in relying on several other factors in aggravation that he characterizes as elements of the underlying offense, including P.M.'s youthfulness, that defendant took advantage of a position of trust, and that he engaged in violent or callous conduct in carrying out the crime.

A trial court generally has broad discretion to tailor a sentence to a particular case. (*People v. Scott* (1994) 9 Cal.4th 331, 349.) Discretionary choices commonly include the decision to impose the lower or upper term instead of the middle term. (*Ibid.*; see § 1170, subd. (b) ["When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court"].)

In exercising its discretion in selecting one of three authorized terms of imprisonment, "the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision." (Rule

6

4.420(b).)  The court may consider relevant circumstances "obtained from the case record, the probation officer's report, other reports and statements properly received, statements in aggravation or mitigation, and any evidence introduced at the sentencing hearing."  (*Ibid.*)

"A party in a criminal case may not, on appeal, raise 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' if the party did not object to the sentence at trial."  (*People v. Gonzalez* (2003) 31 Cal.4th 745, 751.)  "The rule applies to 'cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons'. . . ."  (*Ibid.*)

In this case, while defendant objected to the court's consideration of the hearsay statements by other alleged victims, defendant did not otherwise object to the additional aggravating factors the court cited at sentencing.  He has thus forfeited his appellate challenge as to those factors.  Anticipating forfeiture, defendant contends his trial counsel was constitutionally ineffective for failing to object below that the trial court improperly used facts that were proof of an element of the offense as aggravators.

"In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was 'deficient' because his 'representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' [Citations.]  Second, [a defendant] must also show prejudice flowing from counsel's performance or lack thereof.  [Citations.]"  (*People v. Jennings* (1991) 53 Cal.3d 334, 357.)  Prejudice is established if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  (*Strickland v. Washington* (1984) 466 U.S. 668, 694.)

"If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." (*Strickland v. Washington, supra*, 466 U.S. at p. 697.) We follow that course here.

The trial court cited four factors in aggravation: (1) the victim was particularly vulnerable (rule 4.421(a)(3)); (2) the manner in which the crime was carried out indicated planning, sophistication, or professionalism (rule 4.421(a)(8)); (3) defendant took advantage of a position of trust (rule 4.421(a)(11)); and (4) defendant engaged in violent conduct indicating a serious danger to society (rule 4.421(b)(1)). In his opening brief, defendant challenged the trial court's use of three of the four factors: P.M.'s vulnerability, taking advantage of a position of trust, and violent or callous conduct. He argues each of these factors was actually an element of the crime itself that could not be used to justify an upper term. He did not initially challenge the court's finding of planning; however, he belatedly raises this claim for the first time in his reply brief. We need not consider arguments raised for the first time in a reply. (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335.)

The trial court's planning and sophistication finding alone justifies imposition of the upper term. When a trial court is required to select the lower, middle, or upper term in a sentencing triad (rule 4.420(a)), "[o]nly a single aggravating factor is required to impose the upper term . . . ." (*People v. Osband* (1996) 13 Cal.4th 622, 728.) As the court noted, defendant would accost P.M. when others were asleep, and he would also strategically place himself between her and her family at the movies so he would have access to her while the others were distracted.

In any event, while it is true that a circumstance that is an element of the substantive offense cannot be used as a factor in aggravation (*People v. Wilks* (1978) 21 Cal.3d 460, 470), it is also true that "[a] sentencing factor is only an element of the offense . . . if the crime as defined by statute cannot be accomplished without performance of the acts which constitute such factor." (*People v. Burbine* (2003)

8

106 Cal.App.4th 1250, 1262 (*Burbine*).) We are persuaded that several of the aggravating factors cited by the trial court were *not* in fact elements of the crime of which defendant was convicted, and therefore were properly considered in aggravation.

Defendant pleaded guilty to violating section 288.5. Subdivision (a) of that statute provides: "Any person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense, as defined in subdivision (b) of Section 1203.066, or three or more acts of lewd or lascivious conduct, as defined in Section 288, with a child under the age of 14 years at the time of the commission of the offense is guilty of the offense of continuous sexual abuse of a child and shall be punished by imprisonment . . . ."

As explained in *Burbine, supra*, 106 Cal.App.4th at pages 1262 through 1263, planning and sophistication is properly considered an aggravating factor in a continuous sexual abuse case where a defendant provides his victims with gifts and toys to ensure he remains in their good graces and keeps them from disclosing the abuse. The defendant in *Burbine* cultivated a friendly neighbor relationship with his victims to lull them into acquiescence and silence, which the court found was distinct from the elements of the crime. (*Id.* at p. 1262.) Here, as we have set forth above, defendant did the same.

Likewise, *Burbine* rejected the argument that defendant makes here, that occupying a position of trust with respect to a minor victim is an element of continuous child abuse. (*Burbine, supra*, 106 Cal.App.4th at pp. 1262-1263; see *People v. Clark* (1992) 12 Cal.App.4th 663, 666 [existence of relationship of trust is not an element of crime of continuous sexual abuse of child and is available for sentence enhancing purposes].) As the court pointed out, a neighbor, housecleaner, gardener, or dog walker employed by a child's parents might enjoy "recurring access" to a child without occupying a position of trust with respect to him or her. (*Burbine,* at p. 1263.) In

9

*Burbine*, for example, the defendant took advantage of a position of trust that he developed with his young victims by taking them on rides in his truck, which was equipped with a sleeping area where he molested one of his victims. (*Ibid.*) Similarly, here defendant ingratiated himself with the family to such an extent that P.M. referred to him as her "Uncle John." Taking advantage of that special relationship is not an element of the underlying offense and could be used to justify imposition of an upper term.

Because the above factors support imposing the upper term, counsel's failure to object below was not ineffective and did not prejudice defendant.[3] (*People v. Bradley* (2012) 208 Cal.App.4th 64, 90 [the failure to raise a meritless objection is not ineffective assistance of counsel].) Accordingly, we affirm the judgment.

## DISPOSITION

The judgment is affirmed.


                                                        /s/
                                                Duarte, J.


We concur:


      /s/
Murray, Acting P. J.


      /s/
Krause, J.

---

[3] Given our conclusion, we need not address defendant's contention that the trial court improperly relied on unreliable hearsay when imposing the upper term. (*People v. Osband, supra*, 13 Cal.4th at p. 728 [only single aggravating factor required to impose upper term].)