Filed 10/17/24  P. v. Patrick CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C098300 |
| Plaintiff and Respondent, | (Super. Ct. No. 62172840) |
| v. | |
| ALLEN DEWAYNE PATRICK, | |
| Defendant and Appellant. | |

After a jury found Allen Dewayne Patrick guilty of multiple crimes, including first degree burglary, the trial court found true the allegations that he had two prior felony convictions implicating both the alternative sentencing scheme of the "Three Strikes" law (Pen. Code,[1] §§ 667, subds. (b)-(i), 1170.12) and section 667, subdivision (a)'s

---

[1] Undesignated statutory references are to the Penal Code.

1

requirement of a five-year enhancement for each of those prior offenses. The trial court later declined to strike those felony convictions or dismiss the five-year enhancements and imposed an aggregate term of 35 years to life in prison. On appeal, Patrick contends the trial court abused its sentencing discretion. These claims are forfeited on appeal because Patrick did not raise them in the trial court. Accordingly, we affirm.

BACKGROUND

In May 2020, Patrick entered an occupied hotel room and knocked on the bathroom door. The man inside the bathroom responded, "Ok," believing his friends had just returned to the room with food. When the man exited the bathroom minutes later, he was surprised to see a semi-naked Patrick watching television in bed. The man's friends had arrived too, and they asked who Patrick was, but the man replied he did not know. He told Patrick to leave, but Patrick said to wait because two women were coming. The man insisted Patrick leave and after pulling up his pants, Patrick left. After noticing that two cell phones and car keys were missing from the room, the man went looking for Patrick and confronted him at the elevator in the hallway.

Patrick insisted he did not have the property, although it was visible in his hand. Patrick eventually threw the phones and keys at the man, indicated he wanted to fight, and tried to punch him. When the man punched back, Patrick fled and forced his way into a nearby hotel room by pushing his hands into the chest of a guest who had opened the door because he heard screaming in the hallway. Minutes earlier, Patrick had knocked on that same door and unsuccessfully tried to get the guest to leave the room.

Patrick indicated to the police officer who arrested him that his plan was to convince guests to leave their rooms so that he could take their belongings. He also admitted that methamphetamine found in the officer's patrol car was his.

A jury found Patrick guilty of first degree burglary (§ 459), attempted first degree burglary (§ 664/459), misdemeanor battery (§ 242/243, subd. (a)), and misdemeanor possession of a controlled substance (Health & Saf. Code, § 11377). Later, the trial court

2

found true the allegations that Patrick had two prior felony convictions implicating both the Three Strikes law's alternative sentencing scheme and section 667, subdivision (a)(1)'s requirement of a five-year enhancement for each of those offenses: a pre-2000 conviction for making criminal threats (§ 422) and a 2015 conviction for assault with a deadly weapon (§ 245, subd. (a)(1)).

In a December 2022 sentencing memorandum, Patrick asked the trial court to strike his pre-2000 Three Strikes conviction pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 and dismiss the two five-year enhancements, observing that if the trial court did so it could still impose a just sentence of about 13 years in prison. He also observed that recently enacted legislation provided guidance to the trial court in exercising its discretion to dismiss sentencing enhancements, including giving "great weight" to evidence of mitigating circumstances whose presence favors dismissal of an enhancement unless public safety would be endangered thereby. (See Senate Bill No. 81; Stats. 2021, ch. 721, § 1; § 1385, subd. (c)(1), (2).) Patrick conceded the recent legislation did not require the trial court to apply the new "great weight" standard in deciding whether to grant the *Romero* motion.

At a hearing later that month, defense counsel argued that Patrick's criminal history of "four . . . felonies and a lot of misdemeanor conduct" reflected antisocial behavior resulting from his drug use. The trial court observed that "[i]nterspersed with those" offenses were "various probation and parole violations." "Yes, there are," defense counsel replied. "Mr. Patrick will acknowledge that his performance on past grants of supervision has been poor." But counsel insisted that the interests of justice weighed in favor of dismissal of the pre-2000 Three Strikes conviction because it was over 20 years old and by doing so the trial court could avoid imposing an indeterminate life sentence.

The prosecutor disagreed, arguing Patrick's conduct in the hotel was serious and violent and there were no extraordinary circumstances showing he fell outside the spirit of the Three Strikes sentencing scheme. He was a "career criminal" who would

3

"continue to break the law," as evidenced by his commission of the instant hotel burglary and battery offenses about five months after he was paroled for his 2015 Three Strikes offense, argued the prosecutor.

The trial court asked whether Patrick might be admitted to Delancey Street, a multi-year residential program in San Francisco that helps serious and violent criminals. The trial court emphasized it was "not making any promises or giving any type of indication" regarding how it "might rule on this," but was willing to give Patrick an opportunity to explore the possibility. The trial court said it eats at the Delancey Street restaurant and knows the woman who runs the residential program: "[S]he will boot you out" of the program "in a heartbeat," but is "a phenomenal individual," whom foreign dignitaries have visited. And what is different about Delancey Street, the trial court observed, is that it provides specialized skills for various trades that are practiced within the residential community, skills that Patrick did not have because of his life of crime. "Some people . . . are just not amenable to a quasi-military structure," the trial court warned. It was no problem if that was Patrick's case, the trial court said, because then they would simply go forward with sentencing.

Patrick accepted the trial court's invitation to investigate the possibility of a placement at Delancey Street and the trial court postponed judgment and sentencing. At the beginning of a March 2023 hearing, the trial court observed that sentencing had been continued multiple times "to try to get something worked out" for Patrick, and asked defense counsel for an update. Counsel said the Delancey Street program interviewed Patrick and was unable to accept him, suggesting this was at least in part because the program had more applicants than available beds. But there was another option, counsel indicated. A residential treatment program through the Salvation Army had accepted Patrick. With that, counsel declared he would rest on his December 2022 oral argument and sentencing memorandum, and again asked the trial court to grant the *Romero* motion as to the pre-2000 conviction. The prosecutor again argued against the motion, noting

4

that Patrick had been charged with a new felony since the December 2022 hearing. Defense counsel responded that Patrick pled not guilty to the new charge, which was the sole blemish on his jail record, despite his lengthy time in custody and the challenges of being in jail, where drugs are accessible.

The trial court denied the *Romero* motion, explaining: "While I appreciate that he's been accepted into the Salvation Army program, Delancey Street is just so much more structured. The Court would feel more confident with what he has been faced with, what he's been convicted by a jury in this county, and what the jury has found to be true. That's why I was giving the opportunity for Delancey Street. It's just unfortunate that they have so many applicants and so little room and availability. [¶] But the Court in the Romero motion looked at the nature and circumstances of the current offense including . . . there were a couple of different rooms." The trial court noted Patrick had "a lengthy criminal history. Notwithstanding that, there are, I know, a lot of people in Delancey Street who have very lengthy criminal histories too but it's just most unfortunate. [¶] He has a very lengthy criminal history in terms of his character and whether or not he is within the scheme and the spirit of the Three Strikes Law. There is what the Court finds to be a disregard for the safety of the victims in entering their locations, their residence."

The trial court then imposed an aggregate sentence of 35 years to life: a term of 25 years to life for the first degree burglary, plus 10 years for the two section 667, subdivision (a) five-year enhancements. The trial court imposed a concurrent term of 25 years to life for the attempted burglary. The trial court asked the parties if they wanted to raise anything else. Both parties said no. "All right," the trial court said. "[T]hat will be the sentence imposed in this case then." Patrick filed a notice of appeal with this court in April 2023. His opening brief was filed in January 2024, and this case became fully briefed on October 7, 2024.

5

DISCUSSION

Patrick contends the trial court abused its discretion when denying his *Romero* motion and refusing to strike his section 667, subdivision (a) enhancements by conditioning those decisions on his admission to the Delancey Street program. Patrick further contends the trial court arbitrarily rejected the Salvation Army residential program that accepted him. Next, Patrick argues the trial court failed to give great weight to enumerated statutory factors in refusing to strike his section 667, subdivision (a) enhancements. We decline to consider these claims that Patrick did not raise in the trial court.

A.    *Section 1385*

Under section 1385, subdivision (a), the trial court "may, either on motion of the court or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." Relevant here, this authority includes the power to strike or dismiss both a section 667, subdivision (a) five-year enhancement and a prior strike conviction under the Three Strikes law. (*People v. Dain* (2024) 99 Cal.App.5th 399, 409, review granted May 29, 2024, S283924.)

The Three Strikes law uses a defendant's status as a recidivist to separately increase the punishment for each new felony conviction. (*People v. Williams* (2004) 34 Cal.4th 397, 404.) In considering a *Romero* motion to dismiss a prior strike conviction, the trial court must consider whether, in light of the nature and circumstances of a defendant's present felonies, prior serious and/or violent felonies, his background, character, and prospects, the defendant falls outside the Three Strikes scheme's spirit, and therefore should be treated as though not previously convicted of one or more serious and/or violent felonies. (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

As for section 667, subdivision (a) enhancements, Senate Bill No. 81 amended section 1385 to add a new subdivision (c), which provides, in relevant part: "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the

6

furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute. [¶] (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove [one of nine specified] mitigating circumstances . . . are present.  Proof of the presence of one or more of these [mitigating] circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."  (§ 1385, subd. (c)(1), (2).)

B.      *Forfeiture*

"[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 356.)  This rule applies to cases in which the trial court cited insufficient or inapplicable reasons in support of its sentencing choices. (*Id.* at p. 353, fn. 16; accord, *People v. Scott* (2015) 61 Cal.4th 363, 406.)  There is a simple reason behind this rule: it is unfair and inefficient to permit an appellate claim of error that the trial court could have corrected or avoided if given the chance. (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.)

C.      *Analysis*

Here, although he had the opportunity to do so, Patrick did not object below to the trial court's sentencing decisions or the reasons it gave for those decisions.  He thereby forfeited his appellate claims. (See *People v. Gonzalez* (2003) 31 Cal.4th 751, 752 [the

rule of *People v. Scott* becomes inapplicable only if the trial court fails to give the parties a meaningful opportunity to object].)[2]

DISPOSITION

The judgment is affirmed.

/s/
BOULWARE EURIE, J.

We concur:

/s/
EARL, P. J.

/s/
WISEMAN, J.[*]

---

[2] After oral argument, we solicited supplemental briefing on forfeiture from the parties. Patrick's contentions on the issue lack merit. The authority he cites is distinguishable and he does not persuasively explain how the failure to object below was ineffective assistance of counsel.

[*] Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.