Filed 7/9/25  P. v. Gonzalez CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F087704 |
| Plaintiff and Respondent, | (Super. Ct. No. BF189972A) |
| v. | |
| ERICA GONZALEZ, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John D. Oglesby, Judge.

Roberta Simon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary, Lewis A. Martinez, and Jesica Y. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

A jury convicted Erica Gonzalez (appellant) of second degree murder (Pen. Code, §§ 187, subd. (a), 189, subd. (b); count 1)[1] with an enhancement for the intentional discharge of a firearm proximately causing great bodily injury or death (§ 12022.53, subd. (d); hereinafter section 12022.53(d)), assault with a semi-automatic firearm (§ 245, subd. (b); count 3) with an enhancement for the personal use of a firearm (§ 12022.5, subd. (a)), and discharging a firearm from a motor vehicle (§ 26100, subd. (c); count 4) with an enhancement for the personal use of a firearm (§ 12022.5, subd. (a)). The trial court sentenced appellant to 40 years to life plus six years in state prison.

On appeal, appellant claims the trial court abused its discretion in refusing to dismiss appellant's section 12022.53(d) enhancement pursuant to section 1385, subdivision (c). We conclude an abuse of discretion did not occur. We affirm.

## FACTUAL BACKGROUND

### I. Surveillance Videos.

On May 4, 2022, Joseph Barker drove to a gas station in his black Chrysler sedan. Appellant's codefendant and girlfriend was sitting in the front passenger's seat.[2]

The events at the gas station were captured on high resolution surveillance video cameras. Recordings from two different camera angles were admitted into evidence and played for the jury.

The videos show Barker exit the gas station market with a soda cup and return to his car, which is parallel parked between the market and a set of gas pumps. Appellant is still in the front passenger's seat. After Barker enters, the car does not move. Approximately 30 seconds later, a grey sedan drives forward and stops facing the front of Barker's car, approximately one car length away. The grey sedan's path forward appears

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Barker filed a separate appeal (case No. F087524).

to be blocked by Barker's car and an SUV that had parked at the gas pumps next to Barker's car. Angel Bowdey (Angel) is in the driver's seat of the grey sedan. Her sister, Ammie Bowdey (Ammie), is in the front passenger's seat.[3]

After about 45 seconds, Angel drives the grey sedan forward and stops a few feet from Barker's car. Angel exits the grey sedan and approaches the front of Barker's car. She angrily bangs on the hood several times while appearing to yell. Appellant and Barker open their respective car doors. Appellant exits, stands between the car and the open car door, and argues with Angel. Angel takes several steps toward appellant, moving around the hood toward the passenger's side of the car. Ammie exits the grey sedan and walks behand Angel.

Barker, who was still seated in the driver's seat, reaches through the car and hands appellant a silver semiautomatic handgun. Appellant points the handgun in the direction of Angel and Ammie and pulls back the slide. Ammie grabs Angel by the arm and attempts to move her back, but Angel pulls her arm away. Barker steps out of the driver's side of the car and points a black semiautomatic handgun at Angel. Ammie takes a step back, and appellant and Barker open fire. It is unclear from the surveillance videos who fires first. Angel collapses to the ground. Barker then sweeps his handgun to his left and briefly points it at Ammie as she retreats behind the grey sedan. It is unclear from the surveillance videos whether Barker discharges the handgun when he moves it in Ammie's direction. However, an officer who recovered and reviewed the surveillance videos testified it appears Barker "pointed his firearm at Ammie and shot."

Appellant and Barker get back into Barker's car and flee. As they exit the gas station parking lot, appellant rolls down her window and fires two additional shots. The

---

**3**      For clarity, we refer to Angel Bowdey and Ammie Bowdey by their first names. No disrespect is intended.

bullets strike the wall of the gas station market, several feet away from Angel and Ammie.

## II. Ammie's Testimony.

Ammie testified she went with Angel to the gas station to pump gas. Angel stopped her car in front of Barker's car because she was trying to access the gas pump, but Barker's car was blocking her path. Angel started honking her horn, but Barker's car did not move. Angel then exited her car, banged on the hood of Barker's car, and asked them to move. Appellant stepped out of Barker's car and told Angel, "[B]ang on my hood one more time." Angel responded, "[Y]ou're not going to do nothing." Appellant pointed her handgun at Angel, and Angel stated, "[D]on't point it if you ain't going to use it."

Ammie tried to pull Angel away when she saw that appellant had a handgun. Barker then exited his car with his own handgun, and appellant and Barker both started shooting. Ammie testified appellant and Barker pointed their guns at both her and Angel. She stated appellant and Barker shot Angel and tried to shoot her, but she ran behind the grey sedan.

Ammie went to check on Angel after appellant and Barker began to drive away. She saw that Angel had been shot. She briefly backed away from Angel when appellant fired shots from Barker's car while exiting the parking lot.

Emergency responders arrived and transported Angel to the hospital via ambulance, where she was pronounced deceased.

## III. Appellants Are Arrested Outside of Their Residence.

An officer arrived at the gas station soon after the shooting. He reviewed the surveillance footage from the gas station, which revealed the license plate number on Barker's black Chrysler sedan.

Minutes later, a police aerial unit located appellant's car parked outside of the residence to which it was registered. Officers in the aerial unit observed appellant and Barker exit Barker's car and walk toward a silver Ford, which was also parked nearby. They entered and exited the silver Ford, then ran toward the residence. Barker jumped over a fence into a nearby yard, where he was contacted and arrested by officers on the ground. Appellant hid in a crawl space under the residence. After numerous callouts by officers, she exited from the crawl space and surrendered.

Officers conducted a search of the silver Ford. In the trunk, they discovered a silver nine-millimeter caliber semiautomatic handgun, consistent with the firearm used by appellant, and a black .45-caliber semiautomatic handgun, consistent with the firearm used by Barker. Both handguns were loaded.

## IV.    Subsequent Investigation.

The handguns recovered from the trunk of the silver Ford were swabbed and tested for DNA. Appellant and Barker could not be excluded as contributors to DNA on both handguns.

A forensic pathologist conducted an autopsy on Angel's body. He testified he observed two gunshot wounds. One gunshot entered the front left side of the chest and exited the lower right side of the back. Because the wound was through-and-through, no associated projectile was recovered from inside of the body. The pathologist explained he could not determine the caliber of the projectile that caused the gunshot wound to the chest because the size of the wound does not correlate to the caliber of the bullet.

Another gunshot travelled through the left thigh, then entered the right thigh and struck the femur. A projectile was recovered from the right thigh. The People's firearms expert examined the projectile and determined it was a nine-millimeter caliber bullet. She compared the projectile to a round test fired from appellant's silver handgun and opined both were fired by the same firearm.

A crime scene technician responded to the scene of the shooting to search for possible evidence. She observed four apparent bullet strikes on the outside wall of the gas station market. She located two bullet fragments on the ground.

The People's firearms expert explained that the two bullet fragments were a lead core and a jacket fragment. The jacket fragment was damaged, consistent with it having collided with something. The firearms expert compared the jacket fragment to a bullet test fired from Barker's black handgun and opined that both were fired from the same firearm. The lead core was unsuitable for analysis.

## V.     Defense Evidence.

Appellant testified Barker was her boyfriend and they lived together. They were both fentanyl users. They began selling drugs together to support their habits and carried guns for protection.

On the day of the shooting, Barker drove to a gas station so he could buy a soda. When Barker went inside of the market, she remained in the car and smoked fentanyl. Sometime after Barker got back into the car, she heard a thud and saw Angel yelling at them. She had never seen Angel or Ammie before. She stepped out of the car and started arguing with Angel but did not remember what was said. Barker passed her a handgun, and she heard his gun fire. She reacted by pulling the trigger of her handgun, but she did not intend to do so. She claimed she was "oblivious" to everything around her because she was under the influence of fentanyl.

Appellant testified that as she and Barker exited the gas station parking lot, she fired two shots out of her window because she thought Angel and Ammie were going to chase them. She claimed she was scared and panicking and did not know what was happening.

6.

Appellant called a clinical psychologist who assessed her while she was in custody. He diagnosed her with opiate use disorder and intermittent explosive disorder. He explained how these conditions may have affected her thoughts and actions.[4]

## PROCEDURAL BACKGROUND

The Kern County District Attorney's Office filed an amended information charging appellant and Barker with the murder of Angel (§ 187, subd (a); count 1) with a first degree murder allegation (§ 189, subd (a)) and a section 12022.53(d) firearm enhancement, the attempted murder of Ammie (§§ 664, subd. (a), 187, subd. (a); count 2) with an allegation the offense was willful, deliberate, and premeditated (§ 664, subd (a)) and a section 12022.53, subdivision (c) firearm enhancement, and assault with a semiautomatic firearm (§ 245, subd. (b); count 3) with a section 12022.5, subdivision (a) firearm enhancement. The People also charged appellant with discharging a firearm from a motor vehicle at Angel and Ammie (§ 26100, subd. c); count 4) with a section 12022.5, subdivision (a) firearm enhancement.

Appellant and Barker were tried jointly. After all parties rested, the trial court granted appellant's motion for a judgment of acquittal on count 2 pursuant to section 1118.1. The court denied Barker's section 1118.1 motions as to counts 1 and 2.

The jury convicted appellant and Barker of all remaining charges and enhancements, except it found not true the first degree murder allegations on count 1 that the murder was committed by means of premeditation and deliberation. Consequently, appellant and Barker were convicted of second degree murder on count 1.

---

[4] Barker did not present any evidence at trial.

**DISCUSSION**

**I.     The Trial Court Did Not Apply an Incorrect Legal Standard in Declining to Dismiss the Section 12022.53(d) Firearm Enhancement Pursuant to Section 1385, Subdivision (c).**

The trial court declined appellant's request to dismiss the section 12022.53(d) firearm enhancement based on its finding dismissal would endanger public safety.  (See § 1385, subd. (c)(2).)  Appellant contends the trial court abused its discretion by focusing solely on whether appellant currently poses a danger to public safety, without considering whether appellant would pose a danger upon release from custody if the enhancement were dismissed.

**A.     *Background.***

At the sentencing hearing, appellant's counsel requested the trial court dismiss the section 12022.53(d) firearm enhancement pursuant to section 1385, subdivision (c)(2), because its application would result in a sentence of over 20 years.  (See § 1385, subd. (c)(2)(C).)  Counsel argued dismissal would not endanger public safety because appellant had no significant criminal history and was addicted to drugs at the time of the offense.  Counsel also noted that if the enhancement were dismissed, appellant would still have "15 years to prove to the parole board that she can stay away from drugs and that she can be rehabilitated and that she is not a danger to the public."

The trial court denied the request to dismiss the enhancement, stating:  "[I]t is my finding based upon the evidence presented in this trial that she presents a serious danger to the community now and in the future.  With minimal provocation, she retrieved a gun that was handed to her by the codefendant.  [¶] … [¶]  She pointed it, she fired multiple times, got back in the car, drove away, and fired again multiple times.  She is a serious danger to society."

The trial court then sentenced appellant as follows.  On count 1, the court imposed an indeterminate term of 15 years to life, plus an additional and consecutive term of

25 years to life for the section 12022.53(d) enhancement. On count 3, the court imposed the middle term of six years, but stayed the associated section 12022.5, subdivision (a) firearm enhancement. Sentence on count 4 was ordered stayed pursuant to section 654, subdivision (a).

**B.** ***Applicable law – section 1385, subdivision (c).***

Effective January 1, 2022, Senate Bill No. 81 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1) amended section 1385 to add subdivision (c), which provides, in part:

> "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.

> "(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the [listed] mitigating circumstances … are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.' " (§ 1385, subd. (c)(1)–(2).)

Appellant claims the following mitigating circumstance listed in section 1385, subdivision (c) is applicable here and warranted dismissal of the section 12022.53(d) enhancement: "The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed." (§ 1385, subd. (c)(2)(C).)

In *People v. Walker*, our high court explained that "section 1385, subdivision (c)(2)'s mandate to give 'great weight' to enumerated mitigating circumstances requires a sentencing court to 'engage[] in a holistic balancing with *special emphasis* on the enumerated mitigating factors.' " (*People v. Walker* (2024) 16 Cal.5th 1024, 1034.) Accordingly, "if the court does not conclude that dismissal would endanger

9.

public safety, … the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors." (*Id.* at p. 1036.)  The court emphasized, however, that "in most cases 'if the trial court finds that dismissal of an enhancement would endanger public safety, then it is hard to see how dismissal would further the interests of justice,' notwithstanding the applicability of any mitigating factors identified in subdivision (c)(2)." (*Id*. at p. 1033.)

### C.     *Standard of review.*

We review for abuse of discretion a trial court's decision not to dismiss an enhancement under section 1385, subdivision (c).  (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.)  Such an abuse occurs where the court "is unaware of its discretion, fails to consider a relevant factor that deserves significant weight, gives significant weight to an irrelevant or impermissible factor, or makes a decision so arbitrary or irrational that no reasonable person could agree with it."  (*In re White* (2020) 9 Cal.5th 455, 470.)

The burden is on the party attacking the sentence to demonstrate an abuse of discretion occurred.  (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.)  "To meet this burden, the [appellant] must 'affirmatively demonstrate that the trial court misunderstood its sentencing discretion.' " (*People v. Lee* (2017) 16 Cal.App.5th 861, 866.)  "Absent evidence to the contrary, we presume that the trial court knew and applied the governing law." (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390; see *People v. Myers* (1999) 69 Cal.App.4th 305, 310 ["The court is presumed to have considered all of the relevant factors"].)

### D.     *An abuse of discretion did not occur.*

Appellant's claim the trial court failed to conduct a "forward-looking analysis" is primarily based on *People v. Gonzalez* (2024) 103 Cal.App.5th 215 (*Gonzalez*).  There,

the defendant was sentenced to an indeterminate term of 50 years to life for first degree murder, plus 25 years to life for a section 12022.53(d) enhancement. (*Gonzalez,* at p. 220.) The trial court denied the defendant's request to dismiss the enhancement pursuant to section 1385, subdivision (c) based on its finding the defendant " 'presently … does represent a danger to society.' " (*Gonzalez,* at p. 224.) Explaining its ruling, the trial court expressly interpreted section 1385, subdivision (c)(2) as "requir[ing] [it] to decide whether the defendant 'currently at the time of sentencing represent[s] a danger to society.' " (*Gonzalez,* at p. 227.)

*Gonzalez* reversed, holding the trial court applied an incorrect legal standard by focusing solely on "whether the defendant *currently* poses a danger." (*Gonzalez, supra,* 103 Cal.App.4th at p. 228.) It explained that in addition to the current dangerousness of the defendant, a sentencing court should also consider how dismissal of enhancements would impact the length of the defendant's sentence or parole eligibility, because a defendant "who has no prospect of release from prison until he is elderly" may pose less of a risk to public safety. (*Id.* at pp. 228–229.) Additionally, for a defendant serving a lengthy indeterminate sentence, a sentencing court should "take into account that the defendant's release from prison is contingent on review by the Board of Parole Hearings (and for murder convictions, by the Governor)," because such "future review will act as a safety valve against a release that would endanger the public." (*Id.* at p. 228.)

Nothing in the instant record indicates the trial court misinterpreted section 1385, subdivision (c)(2) in the manner rejected by *Gonzalez*, or limited its assessment to whether appellant is currently dangerous. Rather, the trial court expressly found appellant "presents a serious danger to the community now *and in the future*." (Italics added.) Additionally, defense counsel argued during sentencing that dismissal of the section 12022.53(d) enhancement would not endanger public safety because appellant would still have to serve at least 15 years in prison on the second degree murder conviction, and her release would be contingent on the decision of the parole board. The

11.

court's ruling indicates it considered and rejected that argument. Insofar as appellant claims the court did not also assess how dismissal would impact the length of her sentence or parole eligibility date, nothing in the record suggests the court did not take this into consideration. Absent any contrary indication, we presume the court "considered all of the relevant factors." (*People v. Myers, supra,* 69 Cal.App.4th at p. 310.)

In support of the instant claim, appellant also asserts the trial court was unaware of its discretion to impose a lesser included firearm enhancement in lieu of the section 12022.53(d) enhancement, as opposed to dismissing it outright. (See *People v. Tirado* (2022) 12 Cal.5th 688, 700; *People v. McDavid* (2024) 15 Cal.5th 1015, 1030.) We fail to see how this assertion is relevant to whether the trial court applied the correct legal standard in finding dismissal of the enhancement would endanger public safety within the meaning of section 1385, subdivision (c)(2). To the extent appellant seeks to raise a separate claim of sentencing error, it is forfeited, because appellant did not request the court impose a lesser enhancement. (See *People v. Scott* (1994) 9 Cal.4th 331, 356 ["complaints about the manner in which the trial court exercises its sentencing discretion … cannot be raised for the first time on appeal"]; *People v. Gonzalez* (2003) 31 Cal.4th 745, 755 [sentencing challenges on appeal are limited to specific grounds raised below].)[5] Moreover, because appellant did not make the request below, the trial court had no reason to address the existence or scope of its discretion. The claim therefore fails on the merits, as nothing in the record affirmatively demonstrates the court was unaware of its discretion to impose a lesser included enhancement. (*People v. Lee*, *supra*, 16 Cal.App.5th at p. 866.) Unless there is a contrary indication in the record, we presume

---

[5]    The claim is also subject to forfeiture because appellant did not list the claim "under a separate heading or subheading" in her appellate briefs, as required by California Rules of Court, rule 8.204(a)(1)(B). (See *People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 9.)

the court was aware of and applied governing law.  (See *People v. Gutierrez, supra,* 58 Cal.4th at p. 1390.)

To conclude, appellant fails to show the trial court applied an incorrect legal standard in finding dismissal of the section 12022.53(d) enhancement would endanger public safety.  Accordingly, an abuse of discretion did not occur, and this claim is without merit.[6]

## II. The Indeterminate Abstract of Judgment Has Clerical Errors Which Must be Corrected.

The parties agree, as do we, that the indeterminate abstract of judgment incorrectly states appellant was convicted of attempted murder (count 2).  The trial court granted appellant's section 1118.1 motion for a judgment of acquittal on count 2.  We direct the trial court to amend the indeterminate abstract to reflect appellant did not suffer a conviction on count 2.

This court has also discovered the indeterminate abstract of judgment incorrectly lists appellant's conviction on count 1 as "MURDER: FIRST DEGREE."  We direct the trial court to amend the indeterminate abstract to reflect appellant was convicted of second degree murder on count 1.  (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [an appellate court may correct clerical errors in an abstract of judgment].)

### DISPOSITION

The trial court is directed to prepare an amended indeterminate abstract of judgment reflecting the following corrections.  The indeterminate abstract of judgment shall reflect appellant was convicted of second degree murder on count 1.  The indeterminate abstract of judgment shall also reflect appellant did not suffer a conviction

---

[6]     Because we conclude sentencing error did not occur, we also reject appellant's related claim that the trial court's ruling violated his Fourteenth Amendment right to due process (U.S. Const., 14th Amend.).

on count 2.  The trial court shall then forward the amended abstract of judgment to the appropriate entities.  In all other respects, the judgment is affirmed

LEVY, Acting P. J.

WE CONCUR:

DETJEN, J.

FRANSON, J.