Filed 10/3/14  P. v. Hurst CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE, | C074585 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F01865) |
| v. | |
| TIMOTHY ROBERT HURST, | |
| Defendant and Appellant. | |

Defendant Timothy Robert Hurst was involved in a domestic violence dispute with his live-in girlfriend and assaulted an intervener in the dispute.  On appeal, defendant contends the trial court abused its discretion in imposing the upper term for the assault on the intervener in addition to imposing the enhancement for infliction of great bodily injury; alternatively, he contends his counsel rendered ineffective assistance in failing to object to the imposition of the upper term.  The People contend defendant forfeited his claims by failing to object to the sentence at trial, and regardless, the trial court properly imposed the upper term and the enhancement.  We conclude counsel did not have a meaningful opportunity to object to the sentence, so defendant did not forfeit

1

his claims. We also conclude the trial court did not abuse its discretion in imposing the upper term; therefore, we affirm the judgment.

FACTUAL BACKGROUND

Defendant and Rene Wilcots were living together when, at about 10:30 p.m., she was abruptly awakened by defendant, who was yelling at her to cook him something to eat and was angry with her because she had failed to wake him earlier in the day when a friend of his had come to the apartment looking for him. She asked defendant to leave her alone and went to the kitchen to prepare food for him, but instead of calming down, defendant continued to yell at her. When she tried to leave, defendant grabbed her, lifted an ashtray above his head, threatened to hit her with it, and began looking for a hammer. She was screaming, crying, and yelling in fear, and defendant said he would "give [her] something to cry about." She knocked on a shared wall to have the neighbors call the police, but defendant became increasingly violent. He grabbed her and she fell face up onto a futon that was on the floor. Defendant sat on her chest, placed both his hands around her neck, and began strangling her. As she began to lose consciousness, defendant would release her for a few seconds so she could take a couple of breaths and then begin strangling her again. She tried to scream but he placed one hand over her mouth and the other on her neck. This continued for about 10 to 15 minutes, with defendant serially strangling her nearly to the point of unconsciousness, releasing her to get a breath, and then re-engaging. At that point, she asked defendant if she could get some fresh air and he permitted her to go outside. She sat down and began to spit up blood.

Defendant also went outside. Wilcots was between defendant and the door to the apartment. Seeing an opportunity, she ran in the apartment and locked the security screen door and the door to the apartment. She found his cell phone inside and called the police. While she was on the phone to the police, defendant was outside banging on the door. He tore the security door off its hinges and kicked in the apartment door. When

2

defendant came inside, he took the phone from her and then followed her out of the apartment. She walked to the street, waiting for the police, and looking for help. At first she did not see anyone, but then she saw a man, later identified as John Milburn, coming out of some apartments nearby. Defendant approached her and continued yelling at her while she cried and tried to get away. Milburn approached and told defendant to leave her alone because it did not look like she wanted to talk to him. Defendant responded by yelling at Milburn to mind his own business and then punched him in the face repeatedly. After Milburn fell to the ground unconscious, defendant kicked him in the head twice. Defendant then began searching through Milburn's pockets and took his cell phone, flashlight, and wallet, which had money, gift cards, and a debit card inside. Defendant asked Wilcots to go talk and when she refused, he ran off. He apparently went to a friend's house, where he reported that he had "knocked . . . out" someone who tried to intervene in a fight with his girlfriend, and that he had taken that person's wallet, flashlight, and phone.

A jury found defendant guilty of assault by means of force likely to produce great bodily injury on his girlfriend Wilcots (Pen. Code, § 245, subd. (a)(4)--count one);[1] battery on a cohabitant (§ 243, subd. (e)(1)--count two); false imprisonment (§ 236-- count three); theft (§ 487, subd. (c)--count four); assaulting John Milburn by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)--count five); and battery resulting in the infliction of serious bodily injury (§ 243, subd. (d)--count six). The jury also found true the allegation that as to count five, defendant personally inflicted great bodily injury on the victim under circumstances involving domestic violence, pursuant to section 12022.7, subdivision (e).

---

[1] Undesignated statutory references are to the Penal Code.

The trial court sentenced defendant to an aggregate term of 10 years 8 months, including the upper term of four years for count five and a consecutive five-year term for the bodily injury enhancement on that count. The probation department and the People advocated for the imposition of the upper term; defendant disagreed with the probation department's recommendation, but did not object to the imposition of the sentence.

## DISCUSSION

## I

### *Failure to Object*

At the outset, we must discuss defendant's failure to address his claims to the trial court in the first instance at the time of sentencing, which can forfeit the issues on appeal where counsel had a meaningful opportunity to object. (*People v. Scott* (1994) 9 Cal.4th 331, 353-354, 356.) A trial court provides an adequate opportunity "if, at any time during the sentencing hearing, the trial court describes the sentence it intends to impose and the reasons for [it], and the court thereafter considers the objections of the parties before the actual sentencing." (*People v. Gonzalez* (2003) 31 Cal.4th 745, 752 (*Gonzalez*); *id*. at p. 755 [trial court's failure to announce proposed sentence and invite comment cured by actual consideration of objections and rejection on merits, thus may not raise other objections on appeal].)

Here, the trial court stated that it had "received, read, and considered" the probation report, which recommended the upper term for count five, but it did not indicate what sentence it was considering imposing; instead, it asked counsel if they wished to make any statement regarding sentencing. Defense counsel stated that he disagreed with the probation department's recommendation of the upper term. The court then invited defendant to make a statement, which he did. After counsel and defendant had made their statements, but prior to announcing or imposing the sentence, the trial court asked counsel whether the matter was submitted, and counsel responded in the

4

affirmative. The trial court then announced its sentence, concluding by stating "[t]hat will be the order," without inviting comment or objection from counsel.

In failing to comply with the recommendations set forth in *Gonzalez*, the trial court left counsel without a meaningful opportunity to object to its reasoning in imposing the elected sentence. Therefore, defendant may advance his arguments on appeal, and we need not consider his claim of ineffective assistance of counsel.

II

*Imposition of the Upper Term*

Defendant claims the imposition of the upper term for count five was an abuse of discretion because the trial court relied on facts that are elements of other crimes for which he is being punished or that are the basis for the imposed enhancement, granted undue weight to defendant's prior criminal acts, and discounted a mitigating factor. While we agree that some of the circumstances in aggravation considered by the trial court were inappropriate, we nonetheless conclude the remaining aggravating factors support the trial court's selection of the upper term.

A.    *Background*

The probation report noted the following circumstances in aggravation, pursuant to California Rules of Court, rule 4.421:[2] "(a)(1)  The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness or callousness. [¶]  (b)(1)  The defendant has engaged in violent conduct, which indicates a serious danger to society. [¶]  (b)(2)  The defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness. [¶]  (b)(5)  The defendant's prior performance on probation has been unsatisfactory." The report also indicates that defendant has multiple

---

[2]  All undesignated rule references are to the California Rules of Court.

prior juvenile adjudications: armed robbery (§§ 211, 12022, subd. (a)) in 2002; trespassing (§ 602, subd. (1)) in 2004; and resisting arrest (§ 148, subd. (a)), robbery (§ 211) and conspiracy (§ 182, subd. (a)(1)) in 2005. Defendant's adult convictions include possession of rock cocaine for sale (Health & Saf. Code, § 11352, subd. (a)), two separate instances of loitering in a narcotic area (Health & Saf. Code, § 11532, subd. (a)), two separate instances of possession of marijuana (Health & Saf. Code, § 11357, subd. (b)), resisting arrest (§ 148), and receiving stolen property (§ 496) in 2006; loitering (§ 602, subd. (1)) in 2008; and petty theft (§ 484) in 2009. Defendant had at least one probation violation. Defendant was also convicted for possession of marijuana in Oklahoma in 2011. The probation report only reflects a single circumstance in mitigation pursuant to rule 4.408: defendant is youthful in that he is only 25 years old.

In electing the upper term of four years in state prison for count five, after indicating that it had "received, read, and considered" the probation report, the trial court stated: "Upper term is ordered because the Court finds the defendant has a continuing criminal history. And this case was particularly heinous. To choke someone to a point immediately before unconsciousness at least three times is cruel, frightening and dangerous. Then he assaulted a perfect stranger and does render him unconscious, to the point where this victim had no memory of the incident. Then while this victim is unconscious, he takes his wallet and his money. The Court finds that he poses a serious danger to society." The court did not indicate the basis for its imposition of the enhancement for personal infliction of great bodily injury, but the jury had found that enhancement allegation true, presumably based on the fact that defendant's assault of Milburn (two punches to the head and two or three kicks) had rendered him unconscious. The court also imposed sentence on counts one (assault of Wilcots) and four (theft of Milburn) consecutively, and indicated that it did not rely on the facts underlying those terms in selecting the upper term.

6

B.    *Law*

Pursuant to section 1170, subdivision (b), "[w]hen a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court."  Selection of the upper term is justified only when aggravating circumstances outweigh mitigating circumstances.  (*People v. Lamb* (1988) 206 Cal.App.3d 397, 401.)  We review a trial court's election of the lower, middle, or upper term for an abuse of discretion.  (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)  "[A] trial court will abuse its discretion . . . if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision."  (*Ibid*.)  The trial court may base its decision on any aggravating circumstance it deems significant that is " 'reasonably related to the decision being made.' "  (*Id.* at p. 848; see also rule 4.408(a).)

However, the court may not rely on the same fact to both impose the upper term and an enhancement unless the court strikes the enhancement, and may not rely on a fact that constitutes an element of the crime being punished to impose an upper term.  (Rule 4.420(c)-(d); *People v. Jones* (2009) 178 Cal.App.4th 853, 861 (*Jones*).)  But, " '[i]mproper dual use of the same fact for imposition of both an upper term and a consecutive term or other enhancement does not necessitate resentencing if "[i]t is not reasonably probable that a more favorable sentence would have been imposed in the absence of the error." '  [Citation.]  Only a single aggravating factor is required to impose the upper term [citation], and the same is true of the choice to impose a consecutive sentence [citation.]"  (*People v. Osband* (1996) 13 Cal.4th 622, 728-729.)  Thus, where the trial court states both proper and improper reasons for its election, we " 'will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper.  [Citation.]' [Citation.]"  (*Jones,* at p. 861.)

7

C.    *Analysis*

First, we address defendant's claim that the court should have considered his mental illness as a circumstance in mitigation.  In his statement addressing the probation report, defense counsel stated:  "what I did write to the probation officer, which didn't get quoted, was basically that [defendant] has a condition, a mental health condition, I think, to a degree that is not one that would put him within the parameters of [section] 1368, but it does come to the fore and sometimes he loses his temper.  I think that that is more organic than it is volitional.  And I would ask the Court to take that into consideration."  As referenced in the probation report, defendant had been diagnosed with posttraumatic stress disorder following a 2007 incident in which he was shot four times.  Even if we assume defendant has a mental illness, i.e., that he is still suffering from posttraumatic stress disorder, that is not the end of the inquiry.  Rather, to be a circumstance in mitigation, defendant must have been "suffering from a mental . . . condition that significantly reduced culpability for the crime."  (Rule 4.423(b)(2).)  Here, there was no evidence or argument that defendant's mental illness was a factor in the crimes he committed or that his mental illness reduced culpability for those crimes.  Thus, the trial court could properly reject defendant's mental illness as a mitigating factor.

Next, we address defendant's contention that it was improper for the trial court to consider the theft of Milburn and the fact that the assault of Milburn rendered him unconscious, in selecting the upper term for defendant's assault of Milburn.  We agree that reliance on the act of taking the wallet and money from Milburn was improper because those facts constituted an element of the grand theft.  Nor should the court have considered the fact that defendant's assault rendered Milburn unconscious because that was the basis of the enhancement.  However, the court could rely on the fact that Milburn was a "perfect stranger" and that defendant not only rendered Milburn unconscious but unconscious "to the point where this victim had no memory of the incident," as evidence of the "callousness" or "cruelty" of the crime.  (Rule 4.421(a)(1).)  (Though the trial court

8

described the crime as "heinous" as opposed to "callous" or "cruel," the effect is the same.)[3] It could also rely on the fact that defendant continued to kick Milburn even after he had fallen to the ground unconscious as evidence that "defendant has engaged in violent conduct that indicates a serious danger to society." (Rule 4.421(b)(1).) Therefore, the trial court did not err in considering these facts as evidence of factors comprising circumstances in aggravation.

Defendant also argues that defendant's violent conduct toward Wilcots could not be used as the basis for selecting the upper term for defendant's assault of Milburn. It is unclear how the court considered the Wilcots assault in this context, other than as further evidence of the crime's "heinous" nature. As the court could conclude the crime was cruel or callous based on the facts described above, the trial court's reference to the assault of Wilcots is superfluous and we need not address it.

Moreover, the court could properly consider defendant's "continuing criminal history" in electing the upper term. Contrary to defendant's assertion, it matters not whether defendant's criminal history was comprised of violent offenses--they need only be "numerous" or "of increasing seriousness." (Rule 4.421(b)(2).) Here, defendant had 16 prior criminal offenses in his 25 years on this planet. Though they may have been for relatively minor offenses, they are "numerous." Thus, the trial court could conclude that these aggravating circumstances mean that the upper term "best serves the interests of justice" (§ 1170, subd. (b)), despite defendant's comparatively young age of 25.

Accordingly, we conclude the trial court did not abuse its discretion in imposing the upper term for count five.

---

[3] "Heinous" means "hatefully or shockingly evil" (Merriam-Webster's Collegiate Dict. (11th ed. 2006) p. 577); "callous" means "feeling or showing no sympathy for others" (*id.* at p. 176); and "cruel" means "disposed to inflict pain or suffering; devoid of humane feelings." (*Id.* at p. 301.)

9

## DISPOSITION

The judgment is affirmed.

                                                                       __Blease_____, J.

We concur:

    __Raye_____, P. J.

    __Mauro_____, J.