Filed 12/24/25  P. v. Holman CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D083895 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD263072) |
| LAMONT HOLMAN, | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, David J. Danielsen, Judge.  Affirmed.

Laura Vavakin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson, Christine Y. Friedman, and Monique Myers, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

Defendant Lamont Holman appeals the trial court's denial of full resentencing under Penal Code section 1172.75,[1] which retroactively invalidates most one-year prior prison term sentence enhancements and requires the court to impose a lesser sentence under current sentencing rules unless doing so would endanger public safety. (§ 1172.75, subd. (d)(1), (2).) Defendant is serving a stipulated sentence of 38 years 4 months, which includes a one-year prison prior enhancement, stemming from a 2016 plea deal that globally resolved two separate homicide cases arising from gang-related shootings in 2011 and 2014. In a 2024 proceeding under section 1172.75, the trial court struck defendant's prison prior but declined to further reduce defendant's sentence, finding that doing so would endanger public safety. Defendant contends this was an abuse of discretion because the court's summary of the facts of the charged offense in the lead case (the 2011 homicide) actually related to the facts of the companion case (the 2014 homicide). We conclude defendant forfeited this appellate challenge because he failed to raise this discrepancy during the resentencing hearing when the trial court could easily have corrected its mistake. We also reject defendant's alternative claim that his trial counsel's failure to preserve this issue for appellate review constitutes ineffective assistance of counsel.

Accordingly, we affirm the order.

---

[1]     Statutory references are to the Penal Code unless otherwise indicated.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Underlying Charges

#### 1. The 2014 Homicide Case

In 2014, defendant was charged in case number SCD257627 with several offenses stemming from the 2014 fatal shooting of Gregory Benton and nonfatal shooting of Jazmine R. We will refer to this case as the 2014 homicide case (the year in which the offenses were committed). The complaint charged defendant with murder (§ 187, subd. (a)) and attempted murder (§§ 664, 187, subd. (a)) and alleged that defendant served a prior prison term for a 2011 conviction for carrying a loaded firearm (former § 12031, subd. (a)(1)).

A probation officer's report describes the underlying facts of the 2014 homicide case as follows:

> The victim, Gregory Benton and second victim, Jazmin[e] [R.], had just returned from a nearby market to a J Street address. As the duo was getting out of their car, one, possibly two males got out of a dark colored sedan and opened fire on them. Multiple casings were collected. Jazmin[e] . . . stated one of the suspects yelled, "What that Brim[2] life like?" just before he started shooting. The defendant and codefendant . . . matched the DNA profile identified on some of the collected cartridge casings.

#### 2. The 2011 Homicide Case

In 2015, defendant was charged in case number SCD263072 with several offenses stemming from the 2011 fatal shooting of Cordell King. We will refer to this case as the 2011 homicide case. The operative information

_____

2      "Brim" refers to the 5/9 Brim criminal street gang.

charged defendant with (1) conspiracy to commit murder (§ 182, subd. (a)(1)); (2) murder (§ 187, subd. (a)); and (3) possession of a firearm by a felon (former § 12021, subd. (a)(1)). The conspiracy and murder charges carried gang (§ 186.22, subd. (b)(1)) and firearm (§ 12022.53, subds. (d), (e)(1)) enhancement allegations. The information further alleged defendant suffered a prior strike conviction in 2009 for robbery. The information was amended by interlineation to further allege defendant served a prior prison term for a 2011 conviction for carrying a loaded firearm. (Former § 12031, subd. (a)(1).)

A probation officer's report describes the underlying facts of the 2011 homicide case as follows:

> At 5:09 p.m., 9-1-1 calls were received of "shots fired." Mid-City Division officers responded to the 4700 block of Thorn Street on reports of a shooting. On arrival, officers found a 28-year-old victim, Cordell King, lying in the street. The victim had been shot and was pronounced dead at the scene. The preliminary investigation revealed the victim was standing on the north sidewalk of 4700 Thorn Street using a cell phone when he was shot. A .45 caliber gun used in the shooting was later recovered at a residence in the attic where [two codefendants] were hiding. A confidential informant (CI) positively identified [defendant] as the other person who was with [codefendants] during the murder of Cordell King.

### B. Change of Plea

In January 2016, defendant entered a plea deal that globally resolved the 2014 homicide case and the 2011 homicide case with a stipulated prison sentence of 38 years 4 months. The trial court observed that "the significant thing" about the plea deal is that it eliminated defendant's exposure to an indeterminate life sentence.

In the 2014 homicide case, defendant pleaded guilty to voluntary manslaughter (§ 192, subd. (a)) and admitted firearm and gang enhancement allegations and a strike prior allegation.[3]  In the 2011 homicide case, defendant pleaded guilty to voluntary manslaughter (§ 192, subd. (a)) and admitted the firearm and gang enhancement allegations and the strike prior and prison prior allegations.

As the basis for his guilty plea in each case, defendant admitted he "unlawfully killed a human being without malice upon sudden quarrel or heat of passion by personally using a firearm for the benefit of, at the direction of, or in association with a criminal street gang with intent to promote, further, or assist gang conduct."

The remaining charges in each case were dismissed.

## C.  Sentencing

In preparation for the sentencing hearing, the probation department prepared a stipulated sentence report for each case.  Each report detailed defendant's criminal history, including discussing not only that case's facts, but including a synopsis of the other case.

At the March 11, 2016 sentencing hearing, the trial court sentenced defendant to prison for the stipulated aggregate term of 38 years 4 months. The court allocated the sentence between the two cases as follows.

In the 2014 homicide case, the trial court sentenced defendant to 22 years in prison, comprised of 12 years on the manslaughter conviction (the six-year middle term doubled for the strike prior) plus 10 years for the firearm enhancement.  In the 2011 homicide case, the trial court sentenced

---

[3]    It is unclear from the appellate record when the enhancement and strike prior allegations were added to the pleadings in the 2014 homicide case.

defendant to 16 years 4 months, comprised of 12 years on the manslaughter charge; 3 years 4 months for the firearm enhancement (one-third of the upper term); plus one year for the prison prior enhancement.

The court struck the punishment for the gang enhancement in both cases.

### D.  Section 1172.75

While defendant was serving his prison sentence, the Legislature retroactively invalidated most prison prior enhancements and established a resentencing mechanism.

"Before 2020, the Penal Code instructed criminal sentencing courts to 'impose a one-year term for each prior separate prison term or county jail term' the defendant had previously served for a felony.  [Citations.]  Effective January 1, 2020, the Legislature eliminated these one-year prior-prison-term enhancements except in cases involving prior terms for sexually violent offenses.  [Citation.]  Two years later, the Legislature made the change retroactive.  [Citation.]  In . . . section 1172.75, the Legislature declared that, aside from enhancements imposed for sexually violent offenses, '[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to' . . . section 667.5, subdivision (b) 'is legally invalid.'  [Citation.]  In the same provision, the Legislature established a mechanism for resentencing individuals 'currently serving a term for a judgment that includes' such an enhancement." (*People v. Rhodius* (2025) 17 Cal.5th 1050, 1053–1054 (*Rhodius*).)

Under this mechanism, the California Department of Corrections and Rehabilitation (CDCR) must identify inmates currently serving terms that include a prison prior enhancement and provide that information to each inmate's sentencing court.  (§ 1172.75, subd. (b); see *Rhodius*, *supra*,

17 Cal.5th at p. 1055.) "Upon receiving that information, the sentencing court must 'review the judgment and verify that the current judgment includes a [now-invalid] sentencing enhancement.' " (*Rhodius*, at p. 1055, quoting § 1172.75, subd. (c).) "If the court determines that the current judgment includes [a now-invalid] enhancement . . . , the court shall recall the sentence and resentence the defendant." (§ 1172.75, subd. (c); see *Rhodius*, at p. 1055.)

"Section 1172.75, subdivision (d) sets forth detailed instructions for resentencing once a sentence has been recalled." (*Rhodius, supra*, 17 Cal.5th at p. 1055.) As relevant here, the resentencing must "result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, *unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety*." (§ 1172.75, subd. (d)(1), italics added.) The trial court must "apply the sentencing rules of the Judicial Council" as well as "any other changes in law that reduce sentences . . . ." (*Id*., subd. (d)(2).) The court may also "consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (*Id*., subd. (d)(3).)

### E. Resentencing

In 2023, after receiving notice from CDCR under section 1172.75, the trial court determined that defendant appeared to be eligible for relief. The court appointed counsel for defendant.

7

Defendant later filed a brief requesting a full resentencing.[4]  He also submitted about 20 pages of certificates showing his progress while in custody.  He refused, however, to release his "C-file."[5]

The People filed an opposition in which they argued "clear and convincing evidence [established] that resentencing [defendant] to a lower prison term would endanger public safety."  The People described in detail the facts of the 2011 homicide case, which the brief explained was based on a probation report attached as an exhibit.[6]  The opposition also recounted defendant's criminal history and summarized the facts underlying the 2014 homicide case.

The trial court held a resentencing hearing on February 23, 2024.  At the outset, the trial court struck the prison prior enhancement.  The court then described what it considered in deciding whether to further reduce defendant's sentence.

As for documents, the court stated it considered defendant's brief and supporting documents, the People's opposition, the original abstract of judgment, and "the original probation report, which was in the form of a

---

[4]    The superior court clerk was unable to find defendant's brief.

[5]    "C-file" refers to "the confidential correctional inmate files maintained by the Department of Corrections."  (*People v. Landry* (2016) 2 Cal.5th 52, 71.)  A C-file includes a " 'Disciplinary Section.' "  (*Lunsted v. Superior Court* (2024) 100 Cal.App.5th 138, 144, fn. 1.)

[6]    Although the brief did not expressly identify which case the probation report related to, the brief's description of the 2011 homicide case corresponds to the description in the stipulated sentencing report for that case.  Because it appears this report was before the trial court in connection with the resentencing, we grant the People's request to take judicial notice of the report.  (See Evid. Code, §§ 452, 459.)

stipulated sentence report." The court noted it had "not received nor reviewed the contents of [defendant's] C-file."

Next, the court described the "facts" it considered. This included defendant's juvenile history, which the court described as consisting initially of "relatively minor criminal activity" that escalated to a 2009 true finding for a robbery committed when defendant was a juvenile, and a 2011 conviction for robbery when defendant was about 20 years old.

The court stated it also considered "the facts of the current conviction." Because the prison prior enhancement was imposed in the 2011 homicide case, the "current conviction" necessarily referred to that case. The summary the court provided, however, came from the 2014 homicide case:

> The victim, Gregory Benton, and a second victim, Jazmine [R.], had returned from a market at a J Street address. And as the duo were getting out of their car, at least one, possibly two males got out of a dark-colored sedan and opened fire on them. Multiple casings were collected. And at the time the victim [Jazmine] reported one of the suspects yelling, "What that Brim life like," just before he started shooting. And petitioner and [a] codefendant . . . were matches to the DNA profile identified on the collected cartridge casings.

Finally, the court observed that defendant was "19 at the time of the crime, 24 at the age of conviction," and about 32 or 33 at the time of the resentencing hearing.

The court then heard argument from counsel. Defense counsel argued that "probably the most significant factor" in favor of a full resentencing "would be [defendant's] age at the time of the offense and at the time of his strike priors." Defense counsel did not alert the trial court that its description of the 2011 homicide case related to the 2014 homicide case.

9

The prosecutor argued that her "main issue" was defendant's refusal to release his C-file, which "the statute in this case indicates . . . is one of the things that the court can and should consider in making [its] determinations." "The only other thing" the prosecutor pointed out was that defendant was currently in custody on two separate gang-related fatal shootings.

Defense counsel confirmed that both homicides "are on the same abstract of judgment." She declined the court's invitation to present further argument.

The trial court declined to resentence defendant, giving the following explanation:

> At this time there is an initial determination that the court needs to make, and that is whether [defendant] is going to have the sentence recalled and resentenced. And the initial determination is whether this court finds by clear and convincing evidence whether imposing a lesser sentence would endanger public safety.

> And in considering that, the court has considered the totality of the record, the convictions for which he is currently incarcerated, and the facts and circumstances of those convictions. I have an understanding that I am required to consider the disciplinary record and the record of rehabilitation — and I do have limited information on that — and determine whether or not these efforts or the absence of disciplinary problems indicate a maturation that would indicate he is no longer a danger to public safety.

> In this case this court, based upon the careful review of the record, determines that imposing a lesser sentence at this time would endanger public safety. Accordingly, the recall and resentencing is denied.

The trial court ordered that defendant's prison prior be stricken from the abstract of judgment.

## III.  DISCUSSION

Defendant contends the trial court abused its discretion in denying full resentencing because the court's reference to the wrong underlying facts show that the court did not exercise *informed* discretion.  We conclude defendant forfeited this challenge by failing to raise it at the resentencing hearing and that he has not shown that his trial counsel rendered ineffective assistance by failing to preserve the issue for appeal.

### A.  Defendant Forfeited This Challenge by Failing to Raise it at the Resentencing Hearing

Defendant forfeited his appellate challenge by failing to raise the issue during the resentencing hearing.  "A party in a criminal case may not, on appeal, raise 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' if the party did not object to the sentence at trial."  (*People v. Gonzalez* (2003) 31 Cal.4th 745, 751, quoting *People v. Scott* (1994) 9 Cal.4th 331, 353; see *Scott*, at p. 353 [the forfeiture rule applies to "cases in which the stated reasons allegedly do not apply to the particular case"].)  "The reason for this rule is that '[i]t is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided.' " (*People v. French* (2008) 43 Cal.4th 36, 46.)

Defendant's challenge here falls squarely within the forfeiture rule. Had defendant's trial counsel alerted the court that its purported description of the 2011 homicide case actually related to the 2014 homicide case, the court could easily have corrected the error by describing the facts of the

11

2011 homicide case and explaining why the facts of the 2014 homicide case were nonetheless relevant to the court's analysis. Accordingly, defendant failed to preserve this issue for appellate review.

**B. Defendant Has Not Shown That He Received Ineffective Assistance of Counsel**

Anticipating that we might find a forfeiture, defendant argues in the alternative that his trial counsel's failure to preserve this issue for appellate review constitutes ineffective assistance of counsel. We disagree.

" 'In order to establish a claim of ineffective assistance of counsel, defendant bears the burden of demonstrating, first, that counsel's performance was deficient because it "fell below an objective standard of reasonableness [¶] . . . under prevailing professional norms." [Citations.] Unless a defendant establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." [Citation.] If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel must be rejected "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." [Citations.] If a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice, that is, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ' " (*People v. Lopez* (2008) 42 Cal.4th 960, 966 (*Lopez*); see *Strickland v. Washington* (1984) 466 U.S. 668, 690, 694.)

Defendant has not established either prong of his ineffective assistance claim. As to the first prong, defendant has not overcome the presumption

that his trial counsel acted competently in failing to alert the trial court to its misstatement or shown that counsel could have had no satisfactory explanation for her conduct. (See *Lopez*, *supra*, 42 Cal.4th at p. 966.) Indeed, we can envision a satisfactory explanation. Although the trial court erroneously described the facts of the 2011 homicide case as being those of the 2014 homicide case, the record shows that the court had the facts of both cases before it. First, the stipulated sentencing report for each case contained a synopsis of the other case and the record shows the trial court had both reports before it.[7] Second, both the prosecutor and defense counsel made clear to the court at the resentencing hearing that defendant was in custody on separate gang-related voluntary manslaughter charges, the sentences for which were reflected on the same abstract of judgment. Finally, the trial court expressly stated in its ruling that it "considered the totality of the record, the convictions for which [defendant] is currently incarcerated, and the facts and circumstances of those convictions." The court's reference to plural "convictions" indicates the trial court considered the facts of the 2011 homicide case in denying resentencing. On this record, trial counsel could reasonably have concluded there was little to be gained by alerting the trial court to its misstatement about which facts pertained to which case because the facts of both cases were clearly before the court. (See *People v. Riel* (2000) 22 Cal.4th 1153, 1202 ["Although trial counsel may have the duty to protect the record when their client's trial interests are truly at stake, they have no duty to object simply to generate appellate issues."].)

---

[7] The report for the 2011 homicide case was attached to the prosecution's opposition brief, which the trial court stated it read and considered, and defendant acknowledges the report for the 2014 homicide case was before the court.

Nor has defendant shown that his trial counsel's failure to alert the trial court to its error prejudiced defendant. Defendant maintains he suffered prejudice because the trial court "based its determination on facts and circumstances that were entirely irrelevant to [defendant]'s case." Not so. The facts of the 2014 homicide case were relevant to the trial court's resentencing determination. The Legislature's directive to "apply the sentencing rules of the Judicial Council" (§ 1172.75, subd. (d)(2)) at resentencing required the court to consider the aggravating and mitigating circumstances set forth in the California Rules of Court. (See *People v. Garcia* (2024) 101 Cal.App.5th 848, 858 [holding that the superior court properly considered "the 'seriousness of the offense as charged,' the high maximum potential sentence, [the defendant]'s firing a gun during the robbery, that [the defendant] 'suffered several prior felony convictions that seemed to become more serious in nature,' and [the defendant]'s postconviction behavior" because "[a]ll of these findings are aggravating circumstances under the sentencing rules promulgated by the Judicial Council"], citing Cal. Rules of Court, rule 4.421(a)(2), (7), (b)(1), (2).) The facts of the 2014 homicide case implicate several aggravating circumstances. (See, e.g., Cal. Rules of Court, rule 4.421(b)(1) [defendant "engaged in violent conduct that indicates a serious danger to society"], (b)(2) [the defendant's prior convictions "are numerous or of increasing seriousness"].) Accordingly, because the trial court considered only relevant evidence, defendant has not shown he was prejudiced by the trial court's purported reliance on irrelevant facts and circumstances.

## IV.  DISPOSITION

The order is affirmed.


                                                              RUBIN, J.

WE CONCUR:


IRION, Acting P. J.


DO, J.